THE PEOPLE OF THE STATE OF NEW YORK ex rel. JAMES W. WEBB, Appellant, v. JOHN F. CLARKE, Respondent.

*Removal of a county detective in the office of the district attorney of Kings county — he occupies a " strictly confidential relation" to the district attorney.*

A county detective appointed by a district attorney of the county of Kings under chapter 772 of the Laws of 1896, which provides that such officers shall " be attached to the office of the district attorney of said county," and "hold office during the pleasure of the said district attorney," and have power to serve papers, process, etc., and to "perform such other duties as may from time to time be required of them by the said district attorney," occupies a " strictly confidential relation to the appointing officer," within the meaning of section 21 of chapter 370 of the Laws of 1899, which substantially re-enacts chapter 821 of the Laws of 1896, and may be discharged without charges being preferred or a hearing being given to him.

APPEAL by the relator, James W. Webb, from an order of the Supreme Court, made at the Kings County Special Term on the 13th day of April, 1900, and entered in the office of the clerk of the county of Kings denying the relator's motion for a peremptory writ of mandamus requiring John F. Clarke to reinstate the relator in the position he formerly held in the district attorney's office of Kings county and to certify the name of the relator to the comptroller of the city of New York as an employee in his office.

*Frederick E. Crane,* for the appellant.

*Martin W. Littleton,* for the respondent.

WOODWARD, J. :

By the provisions of chapter 772 of the Laws of 1896, entitled "An act in relation to the office of the district attorney of the county of Kings, providing for the election of district attorney and the appointment of clerks, stenographers and county detectives for said office," it was provided that "there shall be officers known as county detectives in the county of Kings, and such officers are hereby created by the provisions of this act." These officers, not less than seven nor more than twelve, were to be appointed by the district attorney, who was authorized to fix their compensation, not to exceed $1,200 per year each; "the said county detectives" were to "hold office during the pleasure of the said district attorney." They were to "be attached to the office of the district attorney of said county," and were authorized to serve papers and processes, etc., and to "perform such other duties as may from time to time be required of them by the said district attorney." The relator, an honorably discharged Union soldier, was appointed as a county detective under the provisions of the statute above mentioned on the 3d day of January, 1899, and on the 2d day of January, 1900, he was notified by the defendant that his services were no longer required, and the defendant attempted to discharge him from such position without giving him any hearing or alleging any good cause for such removal, and the defendant has since refused to accept any services from the relator, who now asks for a peremptory writ of mandamus to compel his reinstatement. The motion was denied at Special Term, and from the order denying the motion this appeal is brought, the relator urging that his removal was illegal for two reasons, one of them that he is protected by chapter 708 of the Laws of 1887, and the other that he is protected by the Constitution and the provisions of chapter 370 of the Laws of 1899, known as the White Civil Service Law.

If it be conceded that chapter 708 of the Laws of 1887, a local statute dealing with the employees of the various departments of the city of Brooklyn and county of Kings, is still in force, it may be questioned whether it affords the protection which the relator demands. Mr. Justice CULLEN had this statute under consideration in *People ex rel. Earl* v. *England* (16 App. Div. 97), and it was there held that a clerk of a Police Court in the city of Brooklyn,

appointed under section 14 of title 21 of chapter 583 of the Laws of 1888, authorizing the police justices of that city to appoint clerks, the appointees to serve during the pleasure of the justices, is an independent public officer, and, although a veteran soldier of the Civil war, his office does not fall within the provisions of section 1 of chapter 708 of the Laws of 1887, which relates solely to employees. The relator has evidently sought to avoid this ruling of the court by alleging that he "held a position in the county of Kings, being a process server or subordinate or detective in the district attorney's office," but it is evident that he was appointed to his position under the provisions of chapter 772 of the Laws of 1896, which declares that there shall be "officers known as county detectives in the county of Kings and such officers are hereby created." Under the circumstances it would be difficult to distinguish the case at bar from that of *People ex rel. Earl* v. *England (supra)*. Clearly the tenure of a clerk of a court, where the statute provides for the appointment of one or more clerks to hold office "during the pleasure" of the justice appointing them, is not materially different from that of a county detective created by statute and to hold office "during the pleasure of the said district attorney." They are both, as Mr. Justice CULLEN suggests, "independent public officers," and not mere employees of a department of the city, and they are not, therefore, within the provisions of the statute of 1887. "When to this is added," say the court in the case cited, "the express provision of the statute that each justice should appoint a clerk, and the clerk hold office at the pleasure of the justice, I think it clear that the Legislature did not intend to make the office of clerk subject to any provisions of law which would give an incumbent a permanent tenure." The remark is equally applicable to the statute under which the relator was appointed. This is manifest when it is remembered that chapter 708 of the Laws of 1887 is a local law, and that chapter 772 of the Laws of 1896 is of the same character, and distinctly provides in section 7 that "all acts and parts of acts inconsistent with this act are hereby repealed."

Under the doctrine of the case of *People ex rel. Tate* v. *Dalton* (158 N. Y. 204) we are of opinion that chapter 821 of the Laws of 1896 (substantially re-enacted as section 21 of chapter 370 of the Laws of 1899), entitled "An act to further amend chapter seven

hundred and sixteen of the laws of eighteen hundred and ninety-four, entitled 'an act to amend chapter three hundred and twelve of the laws of eighteen hundred and eighty-four,' entitled 'an act respecting the employment of honorably discharged Union soldiers and sailors in the public service of the state of New York, relative to removals,'" defines the measure of the relator's rights. Indeed, the relator, by demanding a peremptory writ of mandamus, practically concedes that he is not proceeding under the provisions of chapter 708 of the Laws of 1887, for it was held in *People ex rel. Wren* v. *Goetting* (133 N. Y. 569) that a mandamus would not lie under the provisions of this act, as re-enacted in section 29 of title 22 of chapter 583 of the Laws of 1888, to try the title of one claiming a public office filled by another, holding under color of right, where the question of title turns upon a construction of statutory provisions which are not entirely clear and unambiguous. It was there held that his remedy was by information in the nature of a quo warranto. The remedy by mandamus was first granted inferentially in 1894, and in 1896 it was expressly provided that a veteran improperly removed should have "a remedy by mandamus for righting the wrong." This remedy is for wrongs committed under the provisions of chapter 821 of the Laws of 1896, and not for wrongs committed against the relator as an employee of the city of Brooklyn under the provisions of chapter 708 of the Laws of 1887, assuming it to be in force. Chapter 821 of the Laws of 1896 is repealed by chapter 370 of the Laws of 1899, but it is substantially re-enacted as section 21 of the repealing chapter, and the rights of the relator must be deemed to be fixed by the law as it now stands, which provides that "nothing in this section shall be construed to apply to the position of private secretary or deputy of any official or department, or to any other person holding a strictly confidential relation to the appointing officer." Is the position of the relator "strictly confidential?" If we read the provisions of chapter 772 of the Laws of 1896 we can hardly doubt that the Legislature contemplated that these county detectives should be strictly confidential officers. They were to "be attached to the office of the district attorney of said county," and they were empowered, under the direction of the district attorney, to preserve order, "to serve all papers and processes issued from the said office and to examine all bench warrants and

orders of arrest in criminal cases and to perform such other duties as may from time to time be required of them by the said district attorney." In *People ex rel. Flood* v. *Gardiner* (157 N. Y. 520) it was held that unofficial " subpœna servers " in the employ of the district attorney of the city and county of New York were occupying a " strictly confidential " relation to such officer under the meaning of the statute now under consideration ; and no reason suggests itself why the relator's position as an independent official is less confidential in its relations, or why considerations of public policy do not justify the defendant in dismissing him. In the case cited, the court, adopting the opinion of the Special Term, say : " It is clear to one who understands the duties of a district attorney, the methods necessary to adopt to sucessfully prosecute criminals, that the relation of the highest confidence must exist and be preserved on the part of the prosecuting officer towards every subordinate who can or may, under any circumstances, be possessed of office secrets, or operate any part of the secret machinery of the office. Any weakening of this confidence, whether it arises through actual cause or suspicion of matters unprovable, at once affects the efficiency of the service. There is no cure for this but removal."

The order appealed from should be affirmed, with costs.

All concurred, except JENKS, J., not sitting.

Order affirmed, with ten dollars costs and disbursements.