THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN M. SCHAU, Respondent, *v.* JOHN J. McWILLIAMS et al., Constituting the CIVIL SERVICE COMMISSION OF THE CITY OF BUFFALO, et al., Appellants.

1. CIVIL SERVICE — CLASSIFICATION BY MUNICIPAL CIVIL SERVICE COMMISSION NOT REVIEWABLE BY CERTIORARI. The determination of a municipal civil service commission in classifying positions in the public service, although involving the exercise of judgment and discretion, is more of a legislative or executive character than judicial or quasi-judicial, and, therefore, is not reviewable by certiorari.

2. REMEDY FOR ILLEGAL CLASSIFICATION IS BY MANDAMUS. Such determination, however, is not final, but is subject to a limited and qualified judicial control to be exercised in a proper case by mandamus. The general principle that mandamus will lie against an administrative officer only to compel him to perform a legal duty and not to direct how he shall perform that duty when the manner of performance is in his discretion is not a valid objection to the use of that remedy; it will also lie to compel such officer to correct an abuse of such discretion. If the determination clearly violates the Constitution or the statute, mandamus will lie to correct it ; if not, the courts should not intervene ; and to this extent only should they exercise their power of review.

*People ex rel. Schau* v. *Whittet,* 100 App. Div. 176, reversed.

(Argued March 1, 1906; decided May 1, 1906.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered January 16, 1905, which sustained a writ of certiorari to review the proceedings of the defendants in classifying the position of battalion chief in the fire department of the city of Buffalo in the competitive class and reversed such proceedings.

The facts, so far as material, are stated in the opinion.

*Julius M. Mayer, Attorney-General,* for State Civil Service Commission, appellant. The courts have no power to review the determination of the state civil service commission in approving the classification of relator in the competitive class. (*Chittenden* v. *Wurster,* 14 App. Div. 483 ; 152 N. Y. 345 ; *Matter of Guden,* 171 N. Y. 529 ; *People ex rel. Fonda* v. *Morton,* 148 N. Y. 156 ; *People ex rel. Kennedy* v. *Brady,* 166 N. Y. 44 ; *People ex rel. Myers* v. *Barnes,* 114 N. Y. 317 ; *Matter of Baird,* 142 N. Y. 523 ; *People ex rel. Crummey* v. *Palmer,* 152 N. Y. 217 ; *People ex rel. Mack* v. *Burt,* 65 App. Div. 157.)

*Louis E. Desbecker, Corporation Counsel,* for Buffalo Civil Service Commission, appellants. The writ cannot be sustained unless it is found that the position properly belongs in the exempt class. (*People ex rel. Russell* v. *Comrs.,* 76 Hun, 146.)

*Edward R. O'Malley* and *Willard P. Smith* for respondent. The courts have the power to review the determination of the municipal commission and the state commission in classifying the position of battalion chief in the city of Buffalo. (*Chittenden* v. *Wurster,* 152 N. Y. 345; *Rowley* v. *City of Rochester,* 34 Misc. Rep. 291; *People ex rel. Sweet* v. *Lyman,* 157 N. Y. 387; *People ex rel. Sims* v. *Collier,* 175 N. Y. 196; *People ex rel. Fonda* v. *Morton,* 148 N. Y. 156; *Beard* v. *Board of Supervisors,* 142 N. Y. 523; *Blust* v. *Collier,* 62 App. Div. 478; *People ex rel. Myers* v. *Barnes,* 114 N. Y. 317.)

CULLEN, Ch. J. On January 8th, 1899, the civil service commission of Buffalo classified the position of battalion chief in the fire department in the competitive class. This action was approved by the state commission. On January 15th, 1904, the fire commissioners requested the municipal commission to amend its classification and place the position in the exempt class. The municipal commission on April 27th, 1904, recommended to the state commission an amendment of the rules providing that the position of battalion chief should be filled by promotion from the next lower grade in the department without competitive examination, but after a qualifying examination. The state commission held a meeting in reference to the proposed amendment, but never determined to make or to refuse it. On July 12th, 1904, the municipal commission submitted a further amendment, which did not take the position of battalion chief out of the competitive class. This latter amendment was approved by the state commission.

The relator, a captain in the fire department of Buffalo, was appointed battalion chief to fill a vacancy on July 11th, 1904. The municipal civil service commission refused to certify to the relator's pay on the ground that the appointment was unauthorized. Thereupon the relator obtained a writ of certiorari to review the action of the municipal and state civil service commissions in classifying the position of

battalion chief as competitive. The Appellate Division, by a divided court, reversed the action of the commissions on the ground that a competitive examination for the place was not practicable. From that order this appeal has been taken.

At the threshold of the discussion the objection is taken that the action of the civil service commissions is not subject to review by certiorari. That whether a particular position in the civil service of the state or its subdivisions is or is not exempt from examination, may present a judicial question within the constitutional provision requiring appointments thereto to be made " according to merit and fitness, to be ascertained so far as practicable by examinations, which, so far as practicable, shall be competitive," has been held by this court. (*Chittenden* v. *Wurster*, 152 N. Y. 345.) Any other principle would allow the constitutional mandate to be violated with impunity. But granting that principle to its fullest extent, it by no means follows that the action of the civil service commission can be reviewed on certiorari. It is true that there are to be found in the opinions of this court statements that such actions may be so reviewed. I can find, however, no case except the one now before us where the Supreme Court has assumed to reverse the action of the civil service commission on certiorari. It is a well-settled principle that the common-law writ of certiorari issues to review only the decisions of inferior judicial or quasi-judicial tribunals. (*People ex rel. Copcutt* v. *Bd. of Health*, 140 N. Y. 1 ; *People ex rel. Trustees of Jamaica* v. *Supervisors Queens Co.*, 131 id. 468; *People ex rel. O'Connor* v. *Supervisors Queens Co.*, 153 id. 370.) The question, therefore, is whether the action of the commissioners in classifying the relator's position in the civil service was judicial or quasi-judicial. Here we must not be misled by names. The term " judicial " is used in judicial literature, in opinions and text books, in two distinctly different senses. The action of an administrative or executive officer or board may involve the exercise of judgment and their action is quite often termed judicial. Thus in *Mills* v. *City of Brooklyn* (32 N. Y. 489) it was held that the municipality was not

liable for the insufficiency of a system of public sewers, because the action of the municipal authorities in designing the system of sewerage was judicial. The word was here employed in an entirely different sense from that which is meant when we speak of judges as judicial officers, and the fact that public officers or agents exercise judgment and discretion in the performance of their duties does not make their action judicial in character so as to subject it to review by certiorari. (*People ex rel. Corwin* v. *Walter*, 68 N. Y. 403; *People ex rel. Second Ave. R. R. Co.* v. *Bd. of Commissioners*, 97 id. 37.) Among the recent cases in this court on the subject is that of *People ex rel. Steward* v. *Board of R. R. Commissioners* (160 N. Y. 202), where we upheld the action of the Appellate Division in reversing on certiorari the determination of the board of railroad commissioners granting the application of a railroad company for a certificate of public convenience and necessity. That decision proceeded on the ground that the commissioners were authorized and required to take evidence and all the parties interested were entitled to notice and a hearing. The case represents the farthest limit to which we have extended the right of review of the acts of subordinate officers by certiorari. On the other hand, we have the later decisions of the court in *People ex rel. Kennedy* v. *Brady* (166 N. Y. 44) and *People ex rel. North* v. *Featherstonhaugh* (172 N. Y. 112). In the first case, under a statute which provided that a person holding a position subject to competitive examination in the civil service could be removed or reduced in grade only after the reasons therefor had been stated in writing and filed with the head of the department, and the person so removed given an opportunity to make an explanation, it was held that the action of the head of the department in removing the subordinate was not judicial and was not subject to review by certiorari. It was there said by Judge O'Brien : " Official acts, executive, legislative, administrative or ministerial in their nature or character, were never subject to review by certiorari. The writ could be issued only for the purpose of reviewing some

judicial act.   *   *   *   The relator was entitled to an opportunity to make an explanation and this he had.   He was entitled to have the reasons for his removal expressed in writing and filed in the department, and this provision of the statute was complied with.   He was not entitled to be sworn or to introduce witnesses with respect to the truth or merits of the reasons which were assigned for his removal.   He was not entitled to a trial or a judicial hearing, and, manifestly, there was no trial or judicial hearing before the commissioner."
In the second case, under a statute of the city of Cohoes a commission was required to adopt plans and specifications for a public improvement, to give public notice and a hearing to all parties interested before final adoption of the plans and specifications.   It was held that the determination of the commission sought to be reviewed was neither judicial nor quasi-judicial, and, therefore, not subject to review by certiorari.

Tested by these rules it seems to me that the determination, of the civil service commissioners in classifying the position to which the relator aspired was in no sense a judicial one.   It does not appear in the record that any testimony was taken by them, nor can I find in the statute any authority for the municipal commission to take testimony, though by section 6 the state commission is authorized to subpœna and examine witnesses in certain investigations, which seems scarcely to extend to the subject of making classifications.   However that may be, the only legal evidence in the record is the rules established by the board of fire commissioners for the government of the department.   The rest of the record is taken up with communications from various officials, the arguments of counsel, and the protests of citizens expressing their views and the views of officers of other municipalities upon the practicability or impracticability of subjecting applicants to competitive examination.   I admit that the propriety of classifying this office as competitive or non-competitive involves in a high degree the exercise of judgment, but the judgment is that of the legislative or executive officer rather than that of the judge.   Its proper determination involves

considerations which cannot well be the subject of judicial inquiry. I do not assert that the action of the commissioners in failing to so place offices which should, under the constitutional provision, be placed in the competitive class, is not subject to control, but, as said by Judge Martin in *People ex rel. Sweet* v. *Lyman* (157 N. Y. 368, 375): "The obvious purpose of this provision (the constitutional one) was to declare the principle upon which promotions and appointments in the public service should be made, to recognize in that instrument the principle of the existing statutes upon the subject and to establish merit and fitness as the basis of such appointments and promotions in place of their being made upon partisan and political grounds. It then declares that merit and fitness shall be ascertained by examinations, and also the extent to which they shall be thus determined. The extent to which examinations are to control is declared to be only so far as practicable. This language clearly implies that it is not entirely practicable to fully determine them in that way. It was the purpose of its framers to declare those two principles and leave their application to the direction of the legislature." If it should appear that there was a plain violation by the commission of its duty to classify as competitive an office which was clearly and manifestly so, there should be a remedy in the courts. But there is necessarily a large debatable field as to cases within which there will be great differences of opinion, even among the most intelligent and fair-minded men, and as to this field it seems to me that it is not reasonable that the judgment of an appellate court should be substituted for that of the commissioners. Yet, if the action of the civil service commission is to be reviewed by certiorari, there seems to be no escape from the conclusion that ultimately the classification of every officer or employee in the service of the state, or its political subdivisions, must be determined by this court, for if the classification presents a question of law reviewable by the Supreme Court, that question survives in this court. Surely such a result was never contemplated by the framers of the Constitution or by

the legislature when it enacted the civil service laws. It would cast upon the courts a burden which would not only be difficult for them to bear, but which they are by no means the officers best qualified to discharge. The proper classification of a part of the civil service depends in no small degree on the practical operation of the classification. *A priori* arguments must often yield to actual experience. Take the present case. If we should affirm the action of the civil service commission and it should appear in the future that the classification failed to secure competent officers, surely the classification should be changed. Should the action of the commission be again brought before us for review? It appears that in some of the cities of the state similar offices to that sought by the relator are filled by competitive examinations, and in others not. If the question of the classification is always a judicial one, then there must be the same classification everywhere, for there must be at least some degree of finality in judicial determinations.

It does not at all follow that the action of the civil service commission is not in any case subject to judicial control; but that such control is a limited and qualified one to be exercised by mandamus. If the position is clearly one properly subject to competitive examination, the commissioners may be compelled to so classify it. On the other hand, if the position be by statute or from its nature exempt from examination and the action of the commission be palpably illegal, the commission may be compelled to strike the position from the competitive or examination class, though in such case redress by mandamus would often be unnecessary, as a valid appointment could be made notwithstanding the classification. But where the position is one, as to the proper mode of filling which there is fair and reasonable ground for difference of opinion among intelligent and conscientious officials, the action of the commission should stand, even though the courts may differ from the commission as to the wisdom of the classification. The present case is of this character. We ought not to interfere with the determination of the commissioners

**100**     People ex rel. Schau *v.* McWilliams.     [May,

Opinion of the Court, per Cullen, Ch. J.     [Vol. 185.

that it should be filled by competition; and if they had decided that the position should be filled without competition, equally ought we to refrain from interference. The position lies in that field where the action of the commission should be final.

The general principle that mandamus will lie against an administrative officer only to compel him to perform a legal duty, and not to direct how he shall perform that duty when the manner of performance is in his discretion, is not a valid objection to the use of that remedy. There is a limit to the exercise of discretion by an administrative officer which may be controlled by the courts, and of this we have an example in the case of *Baird* v. *Board of Supervisors of Kings County* (138 N. Y. 95). In that case the board of supervisors had divided the county into assembly districts under the provisions of section 5 of article 3 of the Constitution. The districts so laid out were grossly unequal in point of population. This court, while conceding that the proper discharge of the duty of division involved considerable discretion in the formation of the districts, held that the division was so unequal as not to be a compliance with the constitutional requirement. It was there said by Judge Peckham: "While it is impossible, in the nature of the case, to accurately describe and closely limit the amount of deviation from an equal representation that the practical working of the Constitution may in this respect permit, it is on the other hand sometimes quite possible to say of a particular example that it does or does not violate the constitutional mandate. We have no trouble whatever in detecting the difference between noon and midnight, but the exact line of separation between the dusk of the evening and the darkness of advancing night is not so easily drawn." In pursuance of the order of this court the supervisors made a new division. The validity of the second apportionment was challenged and the case again came to this court. (*Matter of Whitney*, 142 N. Y. 531.) There it was said that while the division was by no means a perfect one, it was not so unequal as to justify an interference by the courts. It seems to me that the cases cited indicate the true

extent to which the court should assume to supervise the action of the civil service commission. If the classification of the commission clearly violates the Constitution or the statute, mandamus should issue to correct the classification. If the action of the commission is not palpably illegal the court should not intervene.

The foregoing views lead to a retraction of those expressed by us in *People ex rel. Sims* v. *Collier* (175 N. Y. 196), where we held that the remedy was not by mandamus but by certiorari. In the opinion then rendered I fully concurred. That case was a proceeding by mandamus, and was properly decided on other grounds than those expressed by the opinion. The civil service scheme of the Constitution and of the statutes is comparatively of new operation in this state, and we must frankly admit that when we declared that the proper remedy was by certiorari we did not appreciate the results that would necessarily follow from such a review. We think it wiser to retract the declaration then made than, for the sake of consistency, to adhere to a rule which would lead to unfortunate and erroneous results.

The order of the Appellate Division should, therefore, be reversed and the writ quashed. But as the relator sought his remedy by certiorari on the faith of our decision in the *Sims* case, the order should be without costs to either party in this court or in the Appellate Division.

Werner, J. (dissenting). While I concur in the practical result which will follow the adoption of the opinion written by the learned chief judge, I desire to record my dissent from the principal reason assigned in support of his conclusion. Although I agree with him as to the limitations upon our jurisdiction to review the determination of boards of civil service commissioners in the classification of positions in the civil service, I take issue with him as to the remedy which should be invoked when such a review is sought. The question upon which we differ, stated in its most concrete form, is whether mandamus or certiorari is the proper writ in such a

case as the one at bar. The learned chief judge asserts that mandamus is the appropriate remedy, while I maintain, and this court has decided in *People ex rel. Sims* v. *Collier* (175 N. Y. 196), that certiorari is the legal and logical channel of review. I base this view upon the following considerations:

1. There is one, and only one, reference to the writ of mandamus in the Civil Service Law, and that is found in section 21 which relates to the unauthorized removal from appointive positions of honorably discharged soldiers, sailors and marines, and certain designated volunteer firemen. This mention of the writ in these specific instances is significant of the legislative intent. If the writ of mandamus had been intended for use in the review of all determinations of boards of civil service commissioners, why was it prescribed only in the cases set forth in section 21 of the statute? *Expressio unius est exclusio alterius.*

2. The office of the writ of mandamus is to compel specified action only in the exercise of purely ministerial functions. When the performance of an official act involves discretion and judgment, the courts, although clothed with power to command action, have no right to decide that it shall be pursued in a particular way or for the accomplishment of a stated result. Unqualified and unhampered action is all that may be commanded in such a case. (*People ex rel. Harris* v. *Commissioners*, 149 N. Y. 26; *People ex rel. Francis* v. *Common Council of Troy*, 78 N. Y. 33; *People ex rel. Myers* v. *Barnes*, 114 N. Y. 317; *People ex rel. Grannis* v. *Roberts*, 163 N. Y. 70.) There are but few instances in which proceedings instituted by writ of mandamus would be broad enough in their scope to review the action of boards of civil service commissioners, and if proceedings instituted by writ of certiorari are to be denied in such cases, it is equivalent to saying that there is no right of review whatever.

3. The writ of certiorari furnishes the appropriate remedy in such a proceeding. The article of the Code of Civil Procedure entitled "The writ of certiorari, to review the determination of an inferior tribunal" (Ch. 16, tit. 2, art. 7) expressly

1906.]   People ex rel. Schau *v.* McWilliams.   **103**

N. Y. Rep.]     Dissenting opinion, per Werner, J.

includes a public "body or officer" as among the inferior tribunals whose determinations may be thus reviewed, and section 2140 of that article enumerates the various subjects comprehended within the limits of judicial review. By that section the courts are given power, among other things, to decide (1) "Whether the body or officer had jurisdiction of the subject-matter of the determination under review; (2) whether the authority, conferred upon the body or officer, in relation to that subject-matter, has been pursued in the mode required by law, in order to authorize it or him to make the determination; and (3) whether, in making the determination, any rule of law, affecting the rights of the parties thereto, has been violated, to the prejudice of the relator." There are two other subdivisions of this section which give the courts power to decide still other questions, but they are not germane to this discussion. I have quoted the foregoing subdivisions for the purpose of showing that upon a review of certiorari proceedings this court has the same power as in mandamus proceedings, to limit and control the questions that it will decide in reviewing the determination of a public officer or body. The learned chief judge says: "If the position is clearly one properly subject to competitive examination, the commissioners may be compelled (by mandamus) to so classify it." I argue that this cannot be done by mandamus without violating the principle that the writ cannot issue to compel a particular kind of action for a stated result in a case involving the exercise of discretion and judgment; and that certiorari is the precise remedy to fit such a case. We could have no better illustration than the proceeding at bar. Upon facts which are undisputed, the legal question is presented whether, under the statute, the board of civil service commissioners acted within its jurisdiction as to the subject-matter; whether the authority conferred was pursued in the manner required by law; and whether, in making its determination, any rule of law affecting the rights of the parties thereto has been violated to the prejudice of the relator. In deciding these questions against

a relator, his right to a further review may properly be denied, upon the ground that the courts have no power to review the determination of a public board or officer, when it or he has proceeded within its or his jurisdiction, and in substantial compliance with the prescribed forms of law.    That, as I understand it, is precisely what must be decided at the threshold of every review of a mandamus proceeding, and it is just what courts are daily called upon to decide in appeals from determinations of police commissioners, of commissioners to assess damages or compensation in condemnation proceedings, or for the opening of streets, and other kindred proceedings in which the decision of the tribunal of first instance is conclusive unless tainted with legal error.

I agree that there is nothing sacred or inflexible in the meaning of the terms "judicial" or "quasi-judicial" functions as applied to proceedings of this character.    In their generally understood and accepted meaning they do not ascribe to lay public officers or bodies the judicial functions of courts of justice, but for want of more accurate terms they simply distinguish acts which are presumed to be the product of judgment based upon evidence, either oral or visual or both, as distinguished from those purely ministerial duties which can only be properly performed in one particular way.

The argument that the assumption by this court of jurisdiction in such proceedings as this will add greatly to the present judicial burdens is cogent but not conclusive.    The underlying and controlling question is whether the right of review in such a proceeding as this is one which can properly be exercised within the same limitations as inhere in the review of mandamus proceedings.    I think not only that it can be, but that there is no other appropriate proceeding by which the same result can be accomplished.    Whenever it appears in a given case that the act sought to be reviewed presents no legal or judicial question, the writ of certiorari should be denied (*People ex rel. Kennedy* v. *Brady,* 166 N. Y. 44; *People ex rel. North* v. *Featherstonhaugh,* 172 N. Y. 112), but when, as in *People ex rel. Steward* v. *Board*

*of R. R. Comrs.* (160 N. Y. 202), the act or decision partakes of the judicial quality, and the question arises as to jurisdiction or legality of procedure, the writ will lie. (*People ex rel. Copcutt* v. *Board of Health,* 140 N. Y. 1 ; *People ex rel. Trustees of Jamaica* v. *Board of Supervisors, Queens Co.,* 131 N. Y. 468 ; *People ex rel. Second Avenue R. R. Co.* v. *Board of Park Commissioners,* 97 N. Y. 37.)

Whether the act of a public body or officer falls within one or the other of these rules depends upon the facts of each given case and can usually be decided without much difficulty. In the case at bar the duty of classification imposed upon the board of civil service commissioners was one involving the exercise of judgment and discretion.   It was exercised, however, by virtue of jurisdiction expressly conferred by the statute, and in substantial conformity to the then existing statutory regulations.   For these reasons I think the writ should have been denied.   But I entertain the view that if it had been made to appear that the board had acted without jurisdiction, or in contravention of the directions of the statute, a question of law would have been presented that would be properly reviewable in certiorari proceedings, and that could not be adequately dealt with in mandamus proceedings.   Quite apart from the foregoing considerations, the writ herein should not have been issued because it was not granted and served within four calendar months after the determination of the board of civil service commissioners. (Code Civ. Pro. sec. 2125.)

For these reasons I concur in the conclusion reached by Chief Judge CULLEN without giving my assent to the reasoning by which it is supported.

O'BRIEN, HAIGHT, VANN and WILLARD BARTLETT, JJ., concur with CULLEN, Ch. J.; WERNER, J., reads dissenting opinion; HISCOCK, J., not sitting.

Order reversed, etc.