PEOPLE ex rel. HUBER v. ADAM, Mayor.

(Supreme Court, Appellate Division, Fourth Department. December 28, 1906.)

1. MUNICIPAL CORPORATIONS — CIVIL SERVICE — ALTERATION OF SCHEDULES—FRAUD.

In a proceeding to compel relator's appointment to the position of bridge tender in the city of Buffalo, to which neither the civil service commission, the city, nor state were parties, an issue of fraud and the violation of the constitutional rights of veterans to a preference in appointment, arising out of a change of the position of bridge tender from one schedule to another of the civil service regulations, could not be raised.

2. SAME—APPOINTMENTS—SCHEDULES—RULES—VETERANS—RIGHT OF APPOINTMENT.

At the death of a bridge tender, an employé of the city of Buffalo, such position was a noncompetitive labor position, under schedule D of the civil service regulations. Relator was then a Civil War veteran, entitled to preference of appointment, and at the head of the list of persons eligible to appointment under such schedule. No examination was required for appointment under schedule D. Before any appointment was made, however, the position of bridge tender was changed from schedule D to schedule C, which included a noncompetitive class of employés, to be appointed by the head of the office or department, subject to a qualifying examination, or, in the discretion of the official, positions might be offered for open competition; no person being entitled to an appointment, except on the certificate of the commissioner that he had been found duly qualified. Held that, relator having made no application for appointment until after the change of the position to schedule C, he was not entitled to appointment as of right without having taken the qualifying examination and obtained the required certificate.

Appeal from Special Term, Erie County.

Mandamus by the people, on relation of Joseph F. Huber, against James N. Adam, mayor of the city of Buffalo. From an order directing the issue of a peremptory writ requiring respondent to appoint relator to the position of bridge tender of the city, respondent appeals. Reversed.

Argued before McLENNAN, P. J., SPRING, WILLIAMS, NASH, and KRUSE, JJ.

Louis E. Desbecker and John W. Ryan, for appellant.

Swift & Swift, for respondent.

WILLIAMS, J. The order should be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs.

On the 15th of March, 1906, Alfred Tebo, while a bridge tender,

died, and a vacancy thereby occurred in that office. Upon the death of Tebo, the harbor master of the city, without the knowledge of the mayor, employed Michael O'Leary, who was on the then civil service list, to act as bridge tender, temporarily, in place of deceased. March 22, 1906, the harbor master notified the mayor of this employment of O'Leary in place of Tebo, deceased, pending the appointment by the mayor of a permanent bridge tender to fill the vacancy, and recommended that such appointment be not made until it should be known whether the civil service rules could be changed so as to allow the appointment of younger men to some of the positions. Upon the recommendation of the harbor master, the civil service commissioner, on the 9th of May, 1906, amended the schedules which form a part of the rules and regulations, by changing the position of bridge tender from schedule D, the labor class, to schedule C, the noncompetitive class, which amendment was approved by the mayor on the 10th day of May, 1906, and by the state civil service commissioner about the 11th day of May, 1906, and was filed in the office of the clerk of the city of Buffalo about the 18th day of May, 1906. No change has since been made with reference to the position of bridge tender. O'Leary continued to hold his position under this temporary appointment when this proceeding was commenced.

Schedule D included all persons employed as laborers, except those specially named in schedules A, B, and C, and included unskilled laborers, and such skilled laborers as were not included in the competitive or noncompetitive class. No examination was required for appointment under schedule D. Schedule A comprised the exempt class; B, the competitive class; C, the noncompetitive class; and D, the labor class. Appointments under schedule C were to be made by the head of the office or department, subject to the qualifying examination only, or, in the discretion of such official, the positions might be offered for open competition or for limited competition of such persons as might be named by the head of the department; but no person could receive an appointment, except upon the certificate of the commissioner that such person had been found to be duly qualified. Huber was an honorably discharged soldier from the army of the United States in the late Civil War, and a citizen and resident of the city of Buffalo, and therefore was entitled to the benefit of section 9 of article 5 of the Constitution, and section 20 of the civil service law (Laws 1899, p. 808, c. 370, as amended by chapter 270, p. 804, Laws 1902). The Constitution provides that appointments in the civil service of cities shall be made according to merit and fitness, to be ascertained, so far as practicable, by examinations, which so far as practicable shall be competitive; provided, however, that honorably discharged soldiers from the army of the United States shall be entitled to appointment, without regard to their standing on any list from which such appointment may be made. The civil service law, as amended, provides that in every department and upon all public works of cities honorably discharged soldiers from the army of the United States shall be entitled to preference in appointment, without regard to their standing on any list from which such appointment may be made to all competitive and noncompetitive positions, provided their qualifications and fitness shall have been ascertained.

When Tebo died, March 15, 1906, the position of bridge tender was in schedule D, the labor class. About March 1, 1906, a list was opened for the registration of laborers, under this schedule, and Huber's name was about that time put on this list for the position of bridge tender and at the head of it. This list became inoperative May 18, 1906, when this position was changed from schedule D to schedule C. This proceeding was commenced June 5, 1906, so that at the time the proceeding was begun there was no list from which bridge tenders could be appointed. There never was any list under schedule C from which bridge tenders could be appointed, and Hubers' name was on no such list. It is not quite apparent what the Special Term intended by the statement in its memorandum that:

"Huber is entitled to preference in appointment as bridge tender, it appearing that he is, and that no other veterans are, on the list of applicants for the position; but, the position now being in the noncompetitive class, Huber must pass an examination in order to qualify."

So far as the record shows, he was upon a list only under schedule D, and we fail to see how being upon that list entitled him to appointment under schedule C, after the position had been changed from the one list to the other.

The counsel for Huber insists that the amendment changing the position from schedule D to schedule C should be disregarded, as having been fraudulently made and in violation of the constitutional right of veterans to preference in appointment to the position. The Special Term refused to permit such an attack upon the validity of the amendment in this proceeding, and we think the court was right in so doing. The civil service commissioners, city and state, are not parties to the proceeding, and it would be manifestly improper to permit such attack in their absence from court. Such an attack should only be permitted in a direct proceeding against the Commissioners, to compel them to change the position back to schedule D, to re-classify the position. People ex rel v. McWilliams, 185 N. Y. 92, 77 N. E. 785; Matter of Dill, 185 N. Y. 106, 77 N. E. 789.

Regarding the amendment as valid and binding, it is not apparent how the relator has shown himself entitled, as a matter of right, to be appointed bridge tender in place of Tebo, deceased. Before this vacancy occurred the relator asked the harbor master to appoint him; but he made no request or demand after the vacancy occurred and before the amendment was made. Possibly he might claim he was entitled to appointment before the amendment was made, and while O'Leary was serving under the temporary appointment, if he had then asked for the position and his qualification had been ascertained in the regular way; but he made no such request, and was never examined. The question, however, to be determined in this proceeding, was whether he was entitled to the appointment when the proceeding was commenced. It was then a question under schedule C, and not schedule D. It is not claimed there was any list under schedule C for bridge tenders. The relator claims that, there being no list, he was entitled to be appointed, on request, subject to a qualifying examination. Under rule 8, appointments to positions under schedule C might be made subject to the qualifying examination only; but there was

a discretion in the appointing officer to offer the position for open competition, and limited competition by such persons as might be named by the appointing officer. The officer was not, under this rule, obliged to appoint relator. He might not name him as one of the persons to compete for the position. The right to appointment was not, therefore, absolute, so as to enable him to secure the same by peremptory mandamus. The writ can be issued only when the right to it is clear and absolute, and it is doubtful if it can issue conditionally, to become operative upon compliance with such condition. This order directed a writ to issue commanding the appointment of the relator without the taking of any qualifying examination or the securing of any certificate as to qualification. The memorandum of the court indicates that its intention was to make the order or the writ conditional upon complying with the provision as to qualification. The order and writ were, however, absolute, and without such condition. The order, as it is, cannot be upheld. It should, at least, be so amended as to direct the issue of the writ only after the qualification examination shall be had and the certificate granted.

We think, however, the order should be reversed entirely. It is not certain that the certificate can be obtained upon examination at all. That is an absolute condition precedent, and without it there is no right to appointment of a veteran even. For the various reasons suggested, the order should be reversed. We see no reason for the issue of an alternative writ, inasmuch as the question of fraud in making the amendment to the civil service rules is not to be determined in the proceeding. The qualification of the relator cannot be determined here. It must be settled on the examination and application for the certificate. There are apparently no disputed questions of fact to be settled.

Order reversed, with $10 costs and disbursements, and motion denied, with $10 costs. All concur.