THE PEOPLE OF THE STATE OF NEW YORK ex rel. THOMAS C. LUTHER, Appellant, *v.* WILLIAM McDERMOTT and Others, as Assessors of the Town of Stillwater, Saratoga County, New York, Respondents.

Third Department, November 14, 1933.

*Arthur H. Vinett* [*John A. Slade* of counsel], for the appellant.

*Sidney W. Hewitt* [*Robert Frazier* of counsel], for the assessors, respondents.

*John J. Bennett, Jr., Attorney-General* [*Eric J. Lake, Assistant Attorney-General*, of counsel], for the State of New York, intervenor, respondent.

BLISS, J.   This is a certiorari proceeding under the Tax Law to review the assessment of lands of the relator, situate in the town of Stillwater, Saratoga county, consisting of 3,851 acres.   These lands were assessed on the assessment roll of the town for the year 1931 at $7,702.   On July 16, 1932, the relator, pursuant to section 16 (now section 13) of the Tax Law, filed with the assessors of the town of Stillwater an application for the classification of said tract as forested or reforested lands.   This application was immediately sent by the assessors to the Conservation Department for its approval.   The assessment roll for said town of Stillwater was then in the course of preparation by the assessors and was completed on August 1, 1932.   The value of the land in question was fixed on this assessment roll at $23,070.   The statutory notice of the completion of the assessment roll and for the hearing of complaints on " grievance day," the third Tuesday of August, was posted as required by law.   On the day fixed for the hearing of complaints the relator filed a written complaint with the assessors claiming

that the assessment was erroneous by reason of overvaluation, unequal in that the lands had been assessed at a higher proportionate value than the assessment of other property on the same roll and illegal in that the application for classification as forested and reforested land had been filed with the assessors prior to the preliminary completion of the assessment roll and the posting of the notices on August first. Some brief testimony was taken. The assessors denied relator's application for reduction and completed and filed the assessment roll as required by law. Relator then instituted this proceeding, a return was filed by the respondents showing all of the proceedings up to that time, a referee was appointed and a trial had. On the trial the relator stood upon the legal question presented by the filing of the application for classification as forested or reforested lands and offered no testimony on the questions of overvaluation and inequality. In the meantime by its certificate of classification dated December 16, 1932, the Conservation Commission certified that the lands of respondent were forested or reforested lands. The lands thus classified vary in an inconsequential amount from the tract for which classification was originally asked.

The referee held that section 16 of the Tax Law was unconstitutional; that the application for classification filed July 16, 1932, did not require the assessors to change the assessment for the year 1932; that the application for classification and the certificate of classification did not control the assessment for the year 1932, and confirmed the 1932 assessment. The Special Term expressed the opinion that the statute is constitutional, but in all other respects confirmed the report of the referee, and judgment was entered accordingly.

The first question to be determined upon this appeal is the constitutionality of section 16 of the Tax Law. This section as it stood in 1932 provided for the separate assessment of forested or reforested lands for purposes of taxation upon the basis of the value of the land, exclusive of the value of trees planted or underplanted thereon or natural forest reproduction, and that such lands should not be assessed at a higher valuation than similar lands without substantial forest growth, situated in the same tax district, " provided, however, that at no time shall the land be assessed at a higher valuation than that at which it was assessed at the time the application for classification is filed as hereinafter provided." The section recites that such special taxation features are made " in view of the benefits to the State and the political subdivisions thereof which will accrue through the reforestation of idle lands,"

and fixes the amount of planting or underplanting necessary to obtain the classification. The section then provides that the owner may secure such assessment by filing with the assessors of the tax district an application for classification under this act, which application shall contain certain information. This application must then be forwarded by the assessors to the Conservation Department for its approval. The Conservation Department, if it approve, shall file a certificate of such approval classifying such tract as forested or reforested land with the assessors and the county clerk of the county in which the lands are situated. The statute then provides that " such land shall be subject to assessment in the manner and amount hereinbefore provided and no other, and shall continue to be so assessed so long as the forest growth shall remain uncut." The statute also provides for a stumpage tax to be paid when such growth is cut and contains other provisions with relation to the continuance of such classification in case of the sale of the property and a provision for the imposition of a stumpage tax when the growth has reached certain stages. All owners of such lands within the State may obtain the benefits of the special taxation features provided by this statute.

For the past several years it has been the policy of the State to encourage reforestation. It is unnecessary for us to review the many benefits which will ultimately accrue to all of the citizens of the State by such reforestation of vacant and denuded lands such as the increase in taxable property, prevention of erosion, equalizing stream flow, flood control, stream control, creation of supplies of potable water, increasing lands available for recreation purposes and the protection of the wild life of the State. The rehabilitation and improvement of our forest resources is a far-sighted, beneficial governmental policy.

To obtain all of these and many other benefits to the State there was first enacted in 1926 the statute which in the year 1932 was section 16 of the Tax Law and is now section 13 thereof, it having been renumbered by Laws of 1933, chapter 470. It is unnecessary to recite the changes which have been made in this law from the time of its first enactment by chapter 610 of the Laws of 1926. Suffice it to say that the general objects and scheme of the statute are still substantially the same. We must here deal with the statute as it stood in July, 1932.

The learned referee held this statute unconstitutional because of discrimination. He reached this conclusion because he thought the statute did not include all forested or reforested lands, but only those designated by the Conservation Commission, which has the power to approve or disapprove an application, and there is no review of its determination.

We see here no unreasonable discrimination. The exemptions afforded by the statute are available to all. They are reasonable and proper. They have as their object the encouragement of a useful industry, something which will ultimately result in great benefit to the State at large. To the average individual the return is so long delayed that he will not consider this form of investment. The carrying charges, particularly taxes, are too great. An unreasonable, arbitrary, capricious or false determination by the Conservation Commission is subject to review by the courts. (*People ex rel. Schau* v. *McWilliams*, 185 N. Y. 92; *People ex rel. Empire City T. Club* v. *State Racing Comm.*, 190 id. 31.) The presumption is in favor of the validity of the statute. We should be clearly convinced of its unconstitutionality before we declare it invalid. (*People* v. *Nebbia*, 262 N. Y. 259.) We hold this statute constitutional.

The relator contends that the portion of section 16 of the Tax Law which provides that at no time shall the land be assessed at a higher valuation than that at which it was assessed at the time the application for classification is filed, in this particular instance means that this forest tract must for the year 1932 be assessed at a valuation not higher than that at which it was assessed for the year 1931. The assessment for 1931 was $7,702. Inasmuch as the assessment roll for the year 1932 was not completed at the time of the filing of the relator's application for classification, viz., July 16, 1932, the relator urges that there was at that time no assessment for the year 1932 and that the only assessment in existence at the time the application was filed was the one for the year 1931. This brings us to a consideration of the provisions of the Tax Law relating to the assessment of real property and a construction of those provisions. Under section 3 all real property within the State is made taxable unless exempt by law. Section 9 provides that real property shall be assessed " as of July first." The mode of assessment is then set forth. Section 20 directs the assessors annually between January first and July first to ascertain by diligent inquiry all the real property and the names of the owners thereof taxable in their tax district. The assessors must then prepare the assessment roll. Section 36 (now section 25) directs that they shall complete it on or before the first day of August, leave a copy thereof with one of their number for public inspection and post the notices of such completion and of their meeting to be held on the third Tuesday of August to review the assessments. The statute then provides for the hearing and determination of complaints, the correction of the roll, its verification and filing.

The question as to the date as of which an assessment roll speaks

is no longer open in this State. " Evidently there must be some day, in the course of the proceeding, on which the assessment may be said to be made. The fixing of this day cannot depend upon the degree of diligence with which the assessors perform their duties; for in that case it would be different in different towns, and there would be a liability to a double assessment. In my opinion the assessment should be considered as made at the expiration of the time limited for making the inquiry, namely, on the first day of July. If there is any change, of residence or in the ownership of the property, after that day, it does not affect the assessment roll. The inquiries are then completed. Any changes which the assessors are authorized to make after that time are such as may be required to correct mistakes. No earlier day can be assumed, because what is done by one or all the assessors prior to the first of July is inchoate and preparatory, and liable to be altered according to their final judgment upon the matter. When the statute speaks of the time ' when the assessment is made ' it refers to the binding and conclusive act which designates the taxpayers and the amount of taxable property. If I am correct in what has been said, it follows that the time referred to in the statute is the first day of July. It cannot be an earlier or a later day without involving incongruities which we cannot suppose the Legislature would have permitted to exist." (*Mygatt* v. *Washburn*, 15 N. Y. 320.)

The rule there laid down has been universally followed. Only confusion could result from the adoption of any other. There must be some definite, fixed and determinable date as of which real property is assessed. The assessors have made their inquiries concerning the property, have viewed the property and obtained all of the other information necessary to enable them to reach their determination before July first. Their determination is then made as of that particular date. Of necessity they cannot complete the clerical work of preparing the assessment roll all on one day and the law allows them the month of July within which to prepare the assessment roll, the roll always referring, however, to July first. The provisions for the hearing and determination of complaints and the correction, verification and filing of the roll all follow in their natural sequence after the completion of the roll. A definite, orderly procedure is thus clearly established. When section 16 of the Tax Law refers to the valuation at which the property *was assessed* at the time the application for the classification is filed it refers in this instance to the assessed valuation as of July 1, 1932.

It is to be presumed that the relator knew all this and particularly that the taxable status of his property would be determined as of July first. Nevertheless he waited until July sixteenth to file his application for the classification of his lands as forested or reforested. If relator's property was overvalued on the 1932 assessment roll the law provided him with a remedy. However, he did not see fit to attempt to establish that claim. Instead, he stands on the unstable ground of an assessment more than a year old. It may well be that the relator was lulled into a false sense of security by the fact that the assessors had in previous years allowed the value to remain unchanged. If so, the court cannot now help him. We must assume that the assessed valuation as determined for the year 1932 is fair and reasonable. Indeed the relator himself does not question that.

The judgment should be affirmed, with costs.

HILL, P. J., RHODES, CRAPSER and HEFFERNAN, JJ., concur.

Judgment affirmed, with costs.