Clare J. Hoyt, J.
On November 29,1965 the Dutchess County Board of Supervisors, pursuant to chapter 878 of the Laws of 1965, adopted a resolution, to become effective December 1, 1965, creating the Department of Public Defender. It provided that the department should consist, among others, of an investigator who shall be a full time employee, who shall have experience as a criminal investigator or as a law enforcement officer. The Public Defender was appointed by a companion resolution and he on December 1, 1965 appointed the petitioner in this article 78 proceeding to the office of investigator and notified the respondent Dutchess County Civil Service Commission of the provisional appointment, pending examination. On February 28, 1966 the Dutchess County Board of Supervisors, apparently considering some impediment in their earlier resolution, adopted Local Law No. 3 of the Local Laws of 1966 of the County of Dutchess, creating the Department of Public Defender which provided that the Public Defender should appoint subject to the approval of the Board of Supervisors “ as many assistant attorneys, clerks, investigators, stenographers and other employees ” as he deems necessary and as authorized by the Board of Supervisors and that such investigators, stenographers, clerks and employees shall serve for terms in conformance with the Rules and Regulations of the Civil Service Commission of the *954 County of Dutchess. Thereupon the Public Defender reported the provisional appointment, pending examination, of petitioner as investigator.
In early December of 1965 respondent Dutchess County Civil Service Commission submitted to the Public Defender proposed specifications for the position of investigator including a statement of his duties, the distinguishing features of the position, examples of work, required knowledge and skills and acceptable experience and training. The specifications were approved by the Public Defender.
The petitioner, who had been a member of the Poughkeepsie City Police Department for a number of years and a detective for three of those years, resigned from the department on December 1,1965 and on that date began his duties as investigator and continues to presently serve in that capacity.
In March of 1966 the respondent Dutchess County Civil Service Commission gave notice that an examination would be held on April 30,1966. The notice of examination described the investigator’s duties as the investigation of criminal proceedings handled by the defender’s office and related work including the interrogation of suspects and witnesses, trial preparation and the like. The notice continued: “ Written Test will be designed to test for (1) knowledge of investigative techniques; (2) ability to prepare written material; (3) ability to understand and interpret written material; (4) ability to analyze information and evidence.” The examination was prepared by the State Civil Service Commission, which has been allowed to intervene in this proceeding, and graded by it. Petitioner did not pass. After receiving notice of his failure he went to the commission’s office and reviewed the examination and the approved answers. Thereafter he commenced this article 78 proceeding for a judgment-annulling the examination, enjoining appointments from the passing list, vacating the job classification of competitive and declaring the position to be exempt.
The main thrust of the petition is two-fold. First it is alleged that the position of investigator cannot properly be classified as competitive. Secondly, it is contended that the examination given was so unrelated to the position to be filled that it should be annulled.
Positions in the classified service fall into four classes— exempt, noncompetitive, labor and competitive (Civil Service Law, § 40). Exempt positions are those which cannot be filled by competitive or noncompetitive examinations because an examination would not be “ practicable ” (§ 41). The noncompetitive class is for positions where it is “ not practicable *955 to ascertain the merit and fitness of applicants by competitive examination ”, but for which certain minimum qualifications may be required (§ 42). The competitive class — where the great majority of positions fall — ds for jobs “ for which it is practicable to determine the merit and fitness of applicants by competitive examination ” (§ 44). County positions — like the one now held by petitioner — are to be classified by the local civil service commission after review of “ a statement of the duties of the position ” (§ 22). Here there is no evidence that the local commission met, approved the job title and certified the position as competitive. However the notice of competitive examination was posted under the names and auspices of the Dutchess County Commission. The effect of posting the examination notice was that the position was classified as competitive. This constitutes an administrative determination by the county civil service commission of the position classification. (See Story v. Craig, 231 N. Y. 33, 37-38.) The classification process is an administrative act involving the exercise of judgment and discretion by the commission. Judicial review of that act is limited as proscribed in People ex rel. Schau v. McWilliams (185 N. Y. 92, 99): “ But where the position is one, as to the proper mode of filling which there is fair and reasonable ground for difference of opinion among intelligent and conscientious officials, the action of the commission should stand, even though the courts may differ from the commission as to the wisdom of the classification ”. The rule is a familiar one. In short, the administrative determination must lack a rational basis if it is to be overturned (Matter of Kaplan v. O’Connell, 281 App. Div. 46, affd. 305 N. Y. 850).
Investigative positions are frequently classified as exempt or noncompetitive. An examination of the various types of investigators listed in the position classification for State agencies and some local agencies found in the appendixes to Civil Service Rules and Regulations (4 NYCRR Appendixes 1, 2) shows 19 investigative positions that are classified as exempt and 27 that are placed in the noncompetitive class. A large number of the positions so treated are investigators for the several district attorneys that are listed. The Public Defender is a counterpart to the District Attorney. His staff investigator has the same relationship to the District Attorney’s investigator and it follows that an exempt or noncompetitive classification might be justified. Yet this does not resolve the question. It is simply one of the factors to be considered. The question presented here is not whether such a classification is justified, but whether it is required. Another factor that warrants consideration but *956 is not, of itself, decisive, is the confidential relationship between the defender and his investigator (Matter of Ottinger v. Civil Serv. Comm., 240 N. Y. 435, 442). When relationships are highly confidential it may not be practicable to competitively examine for the qualities required to fill a position. Such a circumstance may mandate a noncompetitive examination so that the appointing officer would not be restricted to the names highest on the list (Ottinger, supra, pp. 442-443). The Dutchess County Public Defender and two officials holding similar positions in other counties testified that the relationship of defender with investigator was highly confidential. Stress was placed on the rapport that lawyer and investigator must enjoy to function effectively, as well as the relationship that must be established with members of the District Attorney’s staff and the person charged with a crime. Mention was also made of the need for personal courage, individual initiative and other subjective qualifications. Certainly these qualities are not susceptible of a competitive examination. This explains, to a degree, why the District Attorney’s staff investigator is so frequently placed in the exempt or noncompetitive class. The evidence concerning the confidential relationships and duties required of the Public Defender’s investigator stands uncontradicted. From it the conclusion follows that the investigator must have personal qualities and associations satisfactory to the defender to effectively discharge his office.
The only testimony adduced by respondents was given by the Assistant Director of the Municipal Service Division of the New York State Civil Service Department, a career employee in civil service with 31 years’ experience who provides technical assistance and advice to local civil service commissions. Based upon the specification of duties for the investigator in the Dutchess County Public Defender’s office promulgated by the County Civil Service Commission and approved by the Public Defender, the witness expressed the opinion that it would be practicable to competitively examine for the position. The specification reads: 1 £ duties : Under definitely prescribed practices and procedures outlined by County Defender makes investigations to secure and verify facts for use in criminal proceedings as it relates to the office of the County Defender, does related work as required. Examples of Worh (Illustrative only): interrogates suspects; checks criminal history of defendants; investigates and determines the facts surrounding each case; acquires appropriate information by interviewing prospective witnesses; ability to reduce to writing results of investigations ; assists in the preparation of and on the trial of criminal *957 cases; checks financial status of defendants; performs necessary-office work and record keeping in connection with the investigations.”
It is evident that the opinions expressed by respondents’ witness were not those of a person familiar with the functioning of a Public Defender’s office and the relationship that exists between the Public Defender and his investigator. His testimony was the only evidence adduced that contradicts the opinions of the three Public Defenders called by the petitioner that it was not practicable to competitively examine for the investigator’s position. On this record petitioner has demonstrated that there is no rational basis for a competitive classification (People ex rel. Schau v. McWilliams, 185 N. Y. 92, supra). Respondents’ failure of proof is put in sharp focus by resort to a Court of Appeals decision finding there was a rational basis for differing views on the classification of probation officers: “ The respondent, one of the appointees, and the justices of the Court of Special Sessions, assert that the position of probation officer is one which, by reason of its peculiar and manifold duties " * * belongs in the exempt class. * * * The civil service commission, the probation commission, and some eminent experts who are familiar with the workings of each, contend that it is practicable to formulate workable rules for a competitive examination for the position of probation officer. This variance of opinion is alone sufficient to bring the case at bar within the rule laid down in the Schau case [that the action of the commission must stand where there is a fair and reasonable ground for difference of opinion] ” (Matter of Simons v. McGuire, 204 N. Y. 253, 258; emphasis supplied). Here the converse is true. The only evidence adduced to support respondents’ differing opinion of how a Public Defender’s investigator should be classified was given by a witness who was not familiar with the workings of the defender’s office.. There was no qualified expert opinion supporting the respondents’ position. On several occasions the courts have found rational and compelling reasons for classifying similar positions as either exempt or noncompetitive (special agent in the excise department — People ex rel. Sweet v. Lyman, 157 N. Y. 368; county detectives assigned to the District Attorney’s office — People ex rel. Webb v. Clarke, 54 App. Div. 588; see, also, Matter of Meenagh v. Dewey, 286 N. Y. 292, 302, 307 — process servers, investigators in the District Attorney’s office). Where a truly confidential relationship of a personal nature between the appointing officer and the employee must be established, a finding that a competitive examination for the position is not *958 practicable rests on a rational basis (Matter of Volgenau v. Finegan, 163 Misc. 554, 560-561; see, also, Ann. 146 A. L. R. 818). Petitioner has the burden of proving a competitive examination is not practicable, but once he has offered evidence to that effect —• as he did here — respondents have the burden of going forward with the evidence (Farmers’ Loan & Trust Co. v. Siefke, 144 N. Y. 354) to establish a rational basis for their differing opinion. They have not met that burden, so the classification of the position of investigator in the Dutchess County Public Defender’s office as competitive should be annulled. However, the new classification will not be directed. That is a determination to be made by respondents.
Petitioner, in addition to attacking the classification, claims the examination was improper for the position under question, irrespective of the propriety of the classification. The examination has been submitted to the court for in camera inspection. It consists of two parts containing a total of 75 questions. Based upon the testimony of Joseph Watkins and an affidavit made by him entitled “ Supplemental Answer ”, it appears that the same examination was given to candidates for Public Defenders’ investigators in Dutchess, Bockland and Bensselaer Counties, a library investigator, part time, in Yonkers, a legal investigator for the City of Mount Vernon who investigates claims against the city arising from accident cases and foreclosure proceedings, a confidential investigator for Bensselaer County Court who investigates adoptions, wayward minors, juvenile delinquents and applications for pistol permits, and special investigators for the State Department of Social Welfare and for Sullivan County Welfare Department who investigate the expenditure of welfare funds. It further appears from the “ Supplemental Answer ” that examinations given for investigators on the staffs of several District Attorneys were tested on different subjects than those just listed. Copies of seven examination notices for detective investigators are annexed to the “ Supplemental Answer” for positions in the District Attorney’s offices of Queens, Suffolk, Kings and Bronx Counties. On each the notice specifies that the written examination will be designed to test the applicants’ “ (1) Knowledge of the New York State Penal Law and Code of Criminal Procedure; (2) Knowledge of modern principles and practices of investigation and interrogation; (3) Ability to prepare written reports; and (4) Ability to read and understand written material.” The examination given prospective investigators for Public Defenders does not contain a single question concerning the Penal Law or the Code of Criminal Procedure. *959 By categories the examination contains questions designed to test techniques of investigations that would, in the main, be employed by persons charged with the investigation of alleged violations of the Labor Law and the like; reading comprehension; the proper use of grammar and vocabulary in report writing and deductive reasoning. While such a test may be useful in evaluating investigators generally, it is of doubtful value in properly evaluating those who are capable of investigating criminal cases.
Judicial review of a civil service examination is necessarily very limited. Matter of Pollak v. Conway (276 App. Div. 435, 437, mot. for lv. to app. den. 301 N. Y. 816) states: “To reach the conclusion that the commission was wrong in framing this kind of an examination for this kind of a position in the sense in which a court could interfere, we would have to say that the decision to give this examination was arbitrary and capricious ‘which is fairly close to saying no reasonable man would have regarded this examination as appropriate ”. (See, also, Matter of Gulotta v. Falk 9 A D 2d 580.) The examination given in this case was an improper test of the applicants for the position of investigator in the Public Defender’s office and the results thereof are annulled.
Two other issues are raised by the respondents in defense of the examination. They contend that petitioner cannot maintain this proceeding because he failed to first exhaust his right to attack the examination in an administrative proceeding. Further, they contend, by voluntarily submitting to the examination the petitioner is estopped to challenge it or the classification that required a competitive examination.
A person aggrieved by an administrative determination must exhaust his administrative remedies before seeking judicial relief. This general proposition is well settled but it will not serve here to bar petitioner’s right to directly challenge the examination given him. The Civil Service Commission Regulations provide for an administrative appeal from an examination, but only appeals that. “ clearly demonstrate a manifest material error or mistake appearing in a rating key or scale or in the application of such key or scale to candidate test papers or other records of examination performance or eligibility for appointment ” shall be considered (4 NYCRR 55.2; emphasis added). There is no administrative procedure for the review of the question of whether an examination is so unrelated to the position tested for that it is, in its entirety, improper. As a result, there was no administrative remedy for petitioner to pursue.
*960 Estoppel fares no better. Petitioner had no knowledge of the content of the examination before he took it. Examinations are necessarily kept secret before they are given so no candidate can tell before submitting to an examination whether he considers it a fair test. If by submitting to an examination a candidate would be estopped from challenging the examination, he would be left entirely without remedy were a wholly improper test given. Matter of Davier v. Reavy (179 Misc. 425) is not to the contrary. It simply holds that a candidate who knows an examination will cover certain topics and will be graded in a certain fashion cannot withhold complaint about such matters until he learns that he failed to pass the examination. The point is that a person must act with reasonable dispatch to prevent the violation of his rights. But action cannot be required until the person aggrieved knows that his rights have been infringed. Here that time was after, not before, the examination.
The classification of the position held by petitioner was accomplished without action by petitioner. He had been led to believe by a representative of the local civil service commission that his position was secure and it cannot be said that by submitting to the examination he turned an invalid classification into a valid one. In fairness, petitioner’s understandable lack of familiarity with civil service procedures and his desire to do what seemed necessary to satisfy what he believed to be civil service requirements cannot now be turned against him so that he is estopped from attacking the classification of his job.
The petition is granted to the extent indicated. The examination shall be sealed and remain a part of the clerk’s file subject to inspection only upon further order of the court.