THE PEOPLE OF THE STATE OF NEW YORK ex rel. REPUBLICAN AND JOURNAL COMPANY, Respondent, *v.* ABRAHAM H. WIGGINS et al., Constituting the Republican Members of the Board of Supervisors of St. Lawrence County et al., Appellants.

Certiorari — determination of board of supervisors designating newspaper to publish Session Laws not reviewable by certiorari.

Certiorari will not lie except where the question to be reviewed is clearly of a judicial character.

The determination of the supervisors, representing one of the two principal political parties into which the people of a county are divided, or a majority of them, which designates a newspaper to publish the Session Laws and Concurrent Resolutions of the legislature by virtue of section 20 of the County Law (Cons. Laws, ch. 11) is an administrative act not reviewable by certiorari. (*People ex rel. Schau* v. *McWilliams,* 185 N. Y. 92, followed.)

*People ex rel. Republican & Journal Co.* v. *Wiggins,* 188 App. Div. 933, reversed.

(Argued September 27, 1910; decided October 25, 1910.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered May 26, 1910, which sustained a writ of certiorari and annulled a determination of the Republican members of the board of supervisors of St. Lawrence county in designating a newspaper to publish the Session Laws and Concurrent Resolutions of the legislature.

The facts, so far as material, are stated in the opinion.

*Clarence S. Ferris* for appellants. The statute providing for the designation of a newspaper to publish the Session

Laws and Concurrent Resolutions does not require or contemplate that the paper having the largest circulation shall be designated. The supervisors have a discretion in designating a paper for this purpose, and their action should be upheld, unless there is an abuse of such discretion. (L. 1892, ch. 686, § 20.) The action of the supervisors in designating a newspaper to publish the Session Laws and Concurrent Resolutions of the legislature is not reviewable by certiorari. (*People ex rel. Trustees* v. *Bd. of Suprs.*, 131 N. Y. 468 ; *Matter of Armstrong* v. *Murphy*, 65 App. Div. 126 ; *People ex rel. Lodes* v. *Dept. of Health*, 116 App. Div. 890 ; *People ex rel. Mayor* v. *McCarthy*, 102 N. Y. 630 ; *People ex rel. Copcutt* v. *Board of Health*, 140 N. Y. 1 ; *People ex rel. Kennedy* v. *Brady*, 166 N. Y. 44 ; *People ex rel. Schau* v. *McWilliams*, 185 N. Y. 92 ; *People* v. *Supervisors*, 60 Hun, 328.)

*George E. Van Kennen* for respondent. In designating a newspaper to publish the Session Laws and Concurrent Resolutions the paper giving the widest circulation must be selected. (L. 1892, ch. 686, § 20.) Relator's remedy is by writ of certiorari. (*People ex rel. Press Co.* v. *Martin*, 142 N. Y. 228.)

WERNER, J. Under the provisions of the County Law (§ 20) the Republican members of the board of supervisors of St. Lawrence county designated the "Courier and Freeman," a newspaper published in the village of Potsdam in that county, as the medium for the publication of the Session Laws and Concurrent Resolutions of the legislature for the year 1910. The publishers of the "St. Lawrence Republican," another newspaper published in the city of Ogdensburg in the same county, claimed that the latter should have been designated, and applied for a writ of certiorari to review the action of the supervisors. The writ was granted, and a return thereto was made by the respondents. The Appellate Division made an order annulling the determination of the supervisors, and thus,

in effect, decided that the relator, "The St. Lawrence Republican," should have been designated. From that order this appeal has been taken.

Section 20 of the County Law directs that the supervisors representing the two principal political parties into which the people of a county are divided, or a majority of them, "shall designate in writing a paper fairly representing the political party to which they respectively belong, *regard being had* to the advocacy by such paper of the principles of its party and its support of the state and national nominees thereof, *and to its regular and general circulation in the towns of the county.*" It is conceded that both the "Courier and Freeman" and the "St. Lawrence Republican" are papers which advocate the principles of the Republican party and support its state and national nominees, and it is, therefore, apparent that the learned Appellate Division based its order, annulling the designation of the supervisors, upon the ground that the "St. Lawrence Republican" had much the larger circulation in the county, for the undisputed figures in that behalf show that the circulation of the "St. Lawrence Republican" in the county was 5,848 as against 3,248 credited to the "Courier and Freeman." The statute, as we have observed, does not impose upon the supervisors the duty of designating the paper having the largest circulation, but only that regard shall be had "to the advocacy by such paper of the principles of its party and its support of the state and national nominees thereof, and to its regular and general circulation in the towns of the county." It is obvious that this very general and elastic direction invests the supervisors with a wide discretion which may be abused, but that is a matter with which the courts have no right to interfere by writ of certiorari unless the act sought to be reviewed is judicial in its nature.

The office of the writ of certiorari is to provide for a review of the judicial action of inferior courts, special tribunals, public officers and bodies exercising judicial functions. (*People ex rel. Trustees of Jamaica* v. *Board of Supervisors Queens Co.,* 131 N. Y. 468.) This broad definition suggests,

but does not solve, the difficulty of applying logical and practical distinctions to the many forms of official action which lie between those that are essentially and clearly judicial, and others that are as distinctly legislative, administrative or ministerial; a difficulty which is constantly being augmented by the modern tendency of legislatures to delegate all kinds of governmental action to various boards and commissions. Interesting as it might be to discuss the subject from the theoretical point of view, it would hardly be profitable, for the question whether the act sought to be reviewed in this proceeding is judicial or administrative has been definitely disposed of by the decisions of this court. We think it is clearly administrative and, therefore, not reviewable by writ of certiorari. (*People ex rel. Trustees of Jamaica* v. *Board of Supervisors Queens Co.*, 131 N. Y. 468.) In the case cited it was sought to review the action of the board of supervisors of Queens county in adopting a resolution for the improvement of highways and providing for the payment thereof by the issuance of bonds through the county treasurer. It was held that the action of the board could not be reviewed in certiorari proceedings because it was as purely legislative as if it had been passed by the legislature itself. In stating the conclusion of this court, Judge Earl said: "If this action by the supervisors can be reviewed by certiorari, then every act and resolution of the board of supervisors, every ordinance of a city board of aldermen, every ordinance and resolution of a village board of trustees, and generally all the acts of public officers involving the exercise of some discretion, could be reviewed in the same way; and thus there would be a wide departure from the practice and procedure which have always prevailed in this state, and much embarrassment might attend the discharge of legislative, executive and administrative functions by public officers, local boards and state departments." (p. 472.) That case was decided in 1892. Ten years later this court was called upon to decide whether the proceedings of a public improvement commission in awarding a contract for curbing and paving were judicial or

quasi judicial, where the statute directed such a contract to be made whenever the commissioners, in their judgment, deemed the same necessary and the public convenience seemed to require it. In writing for the court Judge HAIGHT said : " The commissioners, as we have seen, have exercised their judgment upon the evidence to which we have alluded and determined that it was for the best interest of the public that the curbing should be constructed of granite. No question of law arises thereon which we think is reviewable in this proceeding." (*People ex rel. North* v. *Featherstonhaugh,* 172 N. Y. 112, 119.)

In the following year (1903) we had before us the cases of *People ex rel. Sims* v. *Collier* (175 N. Y. 196), where the question was whether the civil service commission could be compelled by mandamus to place certain positions in the exempt class. We held that the duty of classification was quasi judicial, involving the exercise of judgment, and that mandamus was not the proper remedy. Although we did not decide in express terms that such a proceeding could be reviewed upon a writ of certiorari, that was the necessary inference to be drawn. The opinion handed down in those cases, setting forth the reasons for that conclusion, clearly indicates that our purpose was to give practical effect to a beneficent statute of extensive application. We then thought that without a right of review by certiorari there might be danger that civil service employees could be injuriously affected by arbitrary or capricious decisions of civil service commissioners. It took but a little time to discover that our remedy, which was deemed necessary on account of the peculiar discretion confided to civil service commissioners, was worse than the evils which it was designed to cure, and the effect of our decision was to open the doors of our courts to a mass of litigation involving the validity of acts which were not properly the subject of judicial review because they were legislative, administrative or ministerial. Having recognized our mistake, we took the first opportunity to correct it, and that was presented in the case of *People ex rel. Schau* v. *Mc Williams* (185 N. Y. 92),

decided in 1906, where we held that the determination of municipal civil service commissioners in classifying positions in the public service, although involving the exercise of judgment and discretion, is more of a legislative or executive character than judicial or quasi judicial, and, therefore, not reviewable by certiorari. In that case we unequivocally retracted the views expressed in the *Sims* case and the other cases decided at the same time, and after the most deliberate consideration held that mandamus, not certiorari, is the proper remedy for improper civil service classification. In the *Schau* case Chief Judge CULLEN, who wrote for the court, went over the whole subject most exhaustively and demonstrated that until the decision in the *Sims* case this court had never departed from the settled rule that certiorari would not lie except where the question to be reviewed was clearly of a judicial character. He pointed out that the case of *People ex rel. Steward* v. *Board of R. R. Commissioners* (160 N. Y. 202) represents the extremest limit to which we have extended the right of review by certiorari of the acts of subordinate officers, and that the action of the Appellate Division in that case in reversing the determination of the board of railroad commissioners was upheld by this court upon the distinct ground that the proceeding was invested with a judicial character because the commissioners were authorized and required to take evidence, and the parties interested were entitled to notice and a hearing.

The order of the Appellate Division should be reversed and the writ quashed, with costs to the appellants in both courts, upon the ground that the determination of the supervisors was an administrative act not reviewable by writ of certiorari.

CULLEN, Ch. J., HAIGHT, VANN, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur.

Order reversed, etc.