PEOPLE ex rel. GUERNSEY v. SOMERS, County Treasurer.

(Supreme Court, Trial Term, Oneida County. May, 1911.)

1. NEWSPAPERS (§ 1*)—DESIGNATION OF OFFICIAL PAPERS—VALIDITY OF DESIGNATION.
    County Law (Laws 1909, c. 16 [Consol. Laws 1909; c. 11]) § 20, requires the members of the board of supervisors in each county representing each of the two principal political parties to designate a newspaper fairly representing the political party to which they belong, regard being had to its advocacy of party principles, its support of the state and national nominees, and to its regular and general circulation in the towns of the county, to publish the session laws and resolutions of the Legislature. The circulation of the R. Tri-Weekly designated by the members of the board of supervisors of a political party to publish the session laws did not exceed 1,000 copies in the whole county, and there were two large towns therein where it had no circulation. Another daily paper was published in the county, having a general circulation of more than 11,000 copies throughout all the towns of the county, and a circulation of about 1,000 copies in the towns in which the R. paper had no circulation. The larger paper also fairly represented the principles of its party. *Held*, that the appointment of the R. paper as the official paper for publication did not conform to the statutory qualifications.
    [Ed. Note.—For other cases, see Newspapers, Cent. Dig. §§ 1–13; Dec. Dig. § 1.*]

2. MANDAMUS (§ 73*)—PURPOSE OF WRIT—PERFORMANCE OF OFFICIAL DUTY.
    While mandamus will not always lie to compel a body to act in a given way, it lies to compel performance of official duty, and hence lies to compel a county board of supervisors to designate a newspaper to publish the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

session laws which has the qualifications of such paper prescribed by statute.

[Ed. Note.—For other cases, see Mandamus, Dec. Dig. § 73.*]

3. **STIPULATIONS** (§ 14*)—CONSTRUCTION—STIPULATIONS OF LAW.

A stipulation, in mandamus to compel a county treasurer to pay to relator money collected for publications of tax sales pursuant to statute, that relator "has performed all the conditions precedent to recovering payment for the work so performed" by him, only meant that he had done the work entitling him to receive payment, provided the designation of his paper as a paper for official publication was lawful; the stipulation being as to the law if it meant that the designation for publication was lawful, and hence not binding upon the court.

[Ed. Note.—For other cases, see Stipulations, Cent. Dig. §§ 24–37; Dec. Dig. § 14.*]

4. **INJUNCTION** (§ 228*)—VIOLATION.

It is dangerous for even persons not parties to the proceeding to infringe a restraining order.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 484–495; Dec. Dig. § 228.*]

Mandamus by the People, on the relation of James J. Guernsey, against James T. Somers, as Treasurer of the County of Oneida. Application denied, and proceeding dismissed.

This is a mandamus proceeding to compel the respondent, as county treasurer of the county of Oneida, to pay to the relator $972 collected by him from the owners of property advertised in the year 1910 for sale, because of the nonpayment of taxes, pursuant to chapter 559 of the Laws of 1902 and the acts amendatory thereof. A peremptory writ was applied for in the first instance, to which the respondent made return, putting in issue the allegations of the petition, and upon which the court, at Special Term on January 7, 1911, ordered that an alternative writ issue to the respondent to show cause why he should not pay the amount stated. The proceeding came on for trial at the Oneida Trial Term in May, 1911, when a jury was waived and the trial proceeded before the court.

Albert J. O'Connor (D. Francis Searle, of counsel), for relator. G. E. Pritchard, for respondent.

PURCELL, J. The history and facts out of which the proceeding arose, stated as briefly as possible, are the following:

On the 30th day of December, 1909, a majority of the Republican members of the board of supervisors of Oneida county, pursuant to the provisions of section 20 of the county law (being chapter 16, Laws of 1909) designated the Rome Tri-Weekly Republican, a newspaper owned and published by the relator, as a paper to publish the session laws and concurrent resolutions of the Legislature for the year 1910, and on the same day filed such designation with the clerk of their board. On the day next following, the Utica Sunday Tribune Company, which published at the city of Utica, in the said county, the Utica Herald Despatch, a newspaper having a general circulation in that county, sued out a writ of certiorari to review the proceeding of the said majority of the members of the board of supervisors in designating the Rome Tri-Weekly Republican as a paper to publish the said session laws and concurrent resolutions. The order allowing said writ provided that:

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"The execution of said designation and all proceedings on account of or by reason of such determination and any further action of said clerk of said board in reference to or upon said designation be and hereby is stayed pending this certiorari, or until further order of the court."

The proceeding under said writ was heard on the return thereto by the Appellate Division of the Supreme Court, Fourth Department, and the court on July 12, 1910, duly made its order annulling the said designation of the said Tri-Weekly Republican. 140 App. Div. 58, 124 N. Y. Supp. 328, opinion by Robson, in which all concurred. The respondent in said writ appealed to the Court of Appeals from the order of said Appellate Division, and, after argument of the appeal, that court in December, 1910, reversed the order of the Appellate Division and quashed the said writ on the ground that the proceedings of the said members of said board of supervisors in designating the said Tri-Weekly Tribune, on the authority of People ex rel. R. & I. Co. v. Wiggins, 92 N. E. 789, was not reviewable by certiorari.

On December 9, 1910, the clerk of the board of supervisors of said county filed in the office of the Secretary of State, as provided by law, a notice stating that the said Rome Tri-Weekly Republican had been selected as one of the papers for the publication within Oneida county of the laws and concurrent resolutions of the Legislature for the year 1910, and prior thereto and pursuant to the provisions of chapter 559 of the Laws of 1902, being the tax law of Oneida county, the relator published the statement and notice relating to the tax sale in said county for the year 1910, which publication consisted of said statement and notice of sale of 486 separate parcels of real estate, for the payment of which the statute provides that the county treasurer shall collect not to exceed the sum of $2 for the publication of each parcel of land for the newspaper publishing the same, and in November of that year the said county treasurer, the respondent herein, sold for the nonpayment of taxes the property so advertised and collected from each of the 486 owners and purchasers of said property the sum of $2 as a fund with which to pay the proper Republican newspaper in the said county of Oneida entitled to publish the said statement and notice of the list of tax sales for the year 1910, and he now has the said money in his possession or under his control. By the said Oneida county tax law, the papers designated by the supervisors of that county to publish the session laws and concurrent resolutions are the proper papers to publish said notice and tax sales. The respondent, Somers, was at all the times mentioned, and still is, the county treasurer of the said county. On December 18, 1910, the relator demanded of the said county treasurer payment to him of the said sum of $972 for the publication of the said statement and notice of the tax sale referred to, and no part thereof has ever been paid to the relator.

The question presented for determination is whether the relator is entitled to the writ and relief demanded, and, unless there was some obstacle to prevent it, he would clearly be entitled to it. The obstacle urged is that the designation of the Rome Tri-Weekly Republican was improperly made and amounted to a mere nullity. If this is so, relief must be denied him. If the question stated had come to me as

an original proposition, I would not hesitate in pronouncing the proceedings of the members of the board of supervisors, in designating the paper mentioned as the proper one for the publication of the session laws and concurrent resolution of the Legislature, a clear violation of official duty on their part; but the way is now made all the easier, as upon the same or substantially the same state of facts as we have here the Appellate Division of the Supreme Court in this judicial department in no uncertain terms condemned the designation referred to, declared it to be contrary to the provisions of the statute, and pronounced it a nullity. I am asked to ignore this decision for the reason that on appeal to the Court of Appeals the order made by the Appellate Division was reversed. That is true; but the reversal was upon a question of practice, it being held that the proceedings of the supervisor could not be reviewed by certiorari proceedings. The reasoning, however, of the learned Appellate Division stands, and its decision should be regarded in the disposition of the question here. Judge Robson analyzed the evidence and arrived at the conclusion that the designation was illegal, a nullity, and in this his four associates concurred, and thus we have the deliberate judgment of the five judges of our Appellate Division upon the question of whether the designation was lawful or unlawful.

[1] Enough for the proper disposition of the case has already been said; but, before leaving it to show the impropriety of the designation of the paper in question, attention is further called to section 20 of the county law, which reads as follows:

"The members of the board of supervisors in each county representing respectively each of the two principal political parties into which the people of the county are divided, or a majority of such members representing respectively each of such parties shall designate in writing a paper fairly representing the political party to which they respectively belong, regard being had to the advocacy of such party, of the principles of its party and its support of the state and national nominees thereof, and to its regular and general circulation in the towns of the county to publish the session laws and concurrent resolutions of the Legislature required by law to be published which designation shall be signed by the members making it and filed with the clerk of the board of supervisors."

Under this statute, no doubt the supervisors of Oneida county had the right to make a designation of a newspaper for the purposes specified. Indeed, it was their duty to do so; but such designation had to be one "fairly representing the political party" to which they belonged; "regard being had to the advocacy of such paper of the principles of its party and its support of the state and national nominees thereof and to its regular and general circulation in the towns of the county." In making such designation, as Judge Robson said:

"On the question whether a newspaper does in fact so fairly represent the principles of the political party as to make it eligible for designation, regard must, as the statute provides, be had not only to its advocacy of the principles of its party and its support of the state and national nominees thereof, but also to its general and regular circulation in the towns of the county in which it is published. If a newspaper is deficient in either of these particulars, and there is another newspaper published in the county which clearly measures up to the full requirements of the statute, it would seem that a designation of the former would be warranted."

Here, the record discloses that the circulation of the Rome Tri-Weekly did not exceed 1,000 copies, and that there were at least two large towns in the county where it did not appear to have any circulation at all, nor was proof made either in the certiorari proceedings or in this to show the circulation of this paper in any of the towns of the county. The best that could be said on the subject was that its circulation in the whole county did not exceed 1,000. Proof to the contrary on this subject, if it existed, could have been given. On the other hand, it was proven that the Utica Herald Despatch is a daily paper published in the city of Utica, having a general circulation throughout all the towns of the county of more than 11,000 copies, and that its circulation in the towns in which the Rome Tri-Weekly Republican did not circulate at all was upwards of 1,000 copies. It was also shown that the Herald Despatch did, in fact, fairly represent the Republican party in Oneida county, as required by the statute in question; it having been designated by the same supervisors in the preceding year as the paper in which to make the publications referred to, and that it was also designated by them on March 11, 1910. Other proofs were given on the subject which were not denied. In this state of facts, can it be doubted that there was an absolute failure on the part of the members of the board of supervisors referred to to designate the proper paper in Oneida county to make the publications referred to? Indeed, I think not, and cannot conceive how any reasonable mind could, on the facts stated, come to a different conclusion. The courts have frequently said, in similar cases, publication instead of patronage is what the Legislature had in view in passing the act referred to, and publication and circulation in a "large and populous county like Oneida county cannot be had in a paper of so limited circulation as the one published by relator."

But it is said that the proceedings of members of the board of supervisors under the same circumstances as occurred here are not open to review; the Court of Appeals having held that certiorari will not lie. If certiorari will not lie, I cannot think that no remedy exists in cases where members of a board fail to perform their duty.

[2] It is true mandamus will not always lie to compel a body to act in a particular way; but it will lie to compel performance of official duty, and, should a board of supervisors fail in this respect in a proper case-made, I doubt not mandamus would lie. People ex rel. Schau v. McWilliams, 185 N. Y. 92, 77 N. E. 785.

[3] It is urged by counsel for the relator that his application should be granted and a recovery had because on the trial it was stipulated, among other things, that the relator "has performed all the conditions precedent to recover payment for the work so performed" by him. It is true such a stipulation was made; but it cannot be believed that the respondent, while resisting the application, would intentionally stipulate away his rights. All the stipulation means, in my judgment, is that the relator did the work required of him to entitle him to receive payment providing the designation had been lawful, and, if it can be said to mean more, I shall hold that it is a stipulation as to the law and not binding upon the court.

In view of the conclusion that I have arrived at, I do not deem it necessary to discuss the question of whether the respondent or even the relator was bound by the restraining order contained in the writ of certiorari referred to. I will say, however, that the language of the order restrained the execution of the designation until the further order of the court, and this, of course, lasted until the decision made by the Court of Appeals in December, 1910. Doubtless, both the respondent and relator had full knowledge of the restraining order, and anything done under it by either of them was in violation of its terms, and would have doubtless led to punishment if contempt proceedings for that purpose had been instituted.

[4] It is dangerous to trifle with a restraining order of the court, even where persons are not parties to the proceeding in which it is issued. People ex rel. Sterns v. Marr, 181 N. Y. 468, 74 N. E. 431, 106 Am. St. Rep. 562.

My conclusion is that the relator's application should be denied, and the proceedings dismissed, but, on account of the peculiar circumstances of the case, without costs.

Findings and final order thereon may be submitted for signature.