[S. F. No. 5724.  In Bank.—August 24, 1911.]

## WALTER A. COOK et al., Respondents, v. CIVIL SERVICE COMMISSION OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Appellants.

CERTIORARI—LIMITATIONS OF WRIT—REVIEW OF JUDICIAL ACTS.—By section 1068 of the Code of Civil Procedure, the office of the writ of *certiorari* is limited to a review of the acts of an inferior tribunal, board, or officer, exercising judicial functions, when such tribunal, board, or officer, has exceeded the conferred jurisdiction, and there is no appeal, nor any plain, speedy, and adequate remedy at law.

ID.—ACTS OF BOARDS AND OFFICERS.—Courts are slow to interfere by *certiorari* with the acts of boards or officers, unless it appears that such acts are clearly judicial in their nature, and it is now almost universally held that the exercise of the judgment of such an officer or board in determining the existence or non-existence of facts, is not necessarily nor usually a judicial act.

ID.—SAN FRANCISCO—CIVIL SERVICE COMMISSION—EXAMINATION NOT A JUDICIAL ACT.—The conducting, by the civil service commission of the city and county of San Francisco, of an examination for promotion of captains in the fire department of that city and county to the rank of battalion chief, and the declaration by them of the percentages attained by the various candidates for promotion,

were not the exercise of a judicial function, and their action in such matters cannot be reviewed on *certiorari*.

ID.—RULES FOR EXAMINATION—DIRECTORY PROVISION FOR—ADOPTION OF RULES NOT JURISDICTIONAL.—Section 3 of article XIII of the charter of that city and county, requiring the adoption of general rules for examinations by the commissioners, expresses not a mandatory but a directory admonition, and there is nothing in the language of the act which makes the adoption of such rules a jurisdictional prerequisite to the holding of examinations by the board.

ID.—UNFAIR EXAMINATION NOT REVIEWABLE ON CERTIORARI. — Having jurisdiction to act, and not acting judicially in holding examinations, the civil service commissioners, even if acting unfairly, could not have their actions subjected to examination by a writ of review.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco setting aside and annulling an examination which had been held by the civil service commission of that city and county for the promotion of certain captains in the fire department to the rank of battalion chief. George A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

Percy V. Long, City Attorney, John T. Nourse, Assistant City Attorney, Harry G. McKannay, and Charles W. Slack, for Appellants.

George A. Connolly, *Amicus Curiæ*, for Michael Boden, a party beneficially interested.

John T. Williams, and Choynski & Humphrey, for Respondents.

MELVIN, J.—Appeal from a judgment of the superior court of the city and county of San Francisco on *certiorari*, setting aside and annulling an examination which had theretofore been held by the civil service commission of that city and county, for promotion of certain captains in the fire department to the rank and standing of battalion chief. Cook, who was one of those taking the examination, petitioned with several of his associates for the writ, setting forth five separate counts, on the first and third of which the matter was finally submitted.

The first and most important question presented by this appeal, and, indeed, in view of the conclusion we have reached the only one we need to consider, is whether or not *certiorari* will lie in a case of this kind; and in this connection it will be necessary to quote those parts of the charter of the city and county of San Francisco which we deem applicable to the matter before us: Article XII of the charter deals exclusively with the subject of civil service. Section 3 is as follows:—

"The commissioners shall make rules to carry out the purposes of this article, and for examinations, appointments, promotions, and removals, and in accordance with its provisions may from time to time make changes in the existing rules. All rules and changes therein shall be forthwith printed for distribution by the commissioners."

In the opinion of the learned judge who issued the writ and gave judgment according to petitioner's prayer, it is shown that his conclusions were based upon the following errors:—

1. The civil service commission had failed to adopt the necessary rules for promotions before calling and conducting examinations as provided by section 3 above quoted.

2. Improper credits were given for "seniority of service."

3. No credits on "ascertained merit" were given at all, but certain arbitrary markings were made for "meritorious service," which the court held to be by no means synonymous with "ascertained merit."

There is a great diversity of decision upon the question of the applicability of the writ of *certiorari*, due almost entirely to the difficulty of determining in many cases the line of division between functions of a judicial nature, and those of legislative, administrative, or executive character. By section 1068 of the Code of Civil Procedure the office of the writ is limited to a review of the acts of an inferior tribunal, board, or officer, exercising judicial functions, when such tribunal, board, or officer, has exceeded the conferred jurisdiction, and there is no appeal, nor any plain, speedy, and adequate remedy at law. Did the civil service commissioners perform a judicial function, and did they act beyond their jurisdiction when they declared the list of eligibles for promotion to the rank of battalion chief after an examination held without the previous adoption of rules, and the printing and distribution of said rules? We think that the great weight of author-

ity in this country is that the conducting of an examination is not in itself the exercise of a judicial function. The courts are slow to interfere by *certiorari* with the acts of boards or officers, unless it appears that such acts are clearly judicial in their nature, and it is now almost universally held that the exercise of the judgment of such an officer or board in determining the existence or non-existence of facts, is not necessarily nor usually a judicial act. The rule was thus expressed in *Frasher* v. *Rader*, 124 Cal. 134, [56 Pac. 797] :

"All political, executive, legislative, and ministerial boards, bodies, and officers are constantly, and indeed perpetually called upon to make decisions affecting the conduct of matters intrusted to them. They exercise their judgments in so doing, and they determine the existence or non-existence of facts. No street in any municipality of the state may be ordered improved until the proper authorities have first decided as a fact that public necessity or convenience requires it. Such decisions, however, are not judgments pronounced by a judicial tribunal. They do not, as to be judicial decisions they must, declare the law and define the rights of the parties under it. But this subject has been discussed so recently and so fully in *Quinchard* v. *Board of Trustees*, 113 Cal. 664, [45 Pac. 856], and in *People* v. *Supervisors*, 122 Cal. 421, [55 Pac. 131], that it would be supererogatory to continue."

In the *Matter of Carter*, 141 Cal. 317, [74 Pac. 997], this court held that the action of the mayor of San Diego in removing an appointive officer was not reviewable on *certiorari* where the charter did not provide for the filing and hearing of charges and deciding their sufficiency before the mayor might act. The modern tendency is to limit, we think, rather than to extend the functions of this writ. Our attention has been called by respondents' counsel to the case of *Robinson* v. *Board of Supervisors*, 16 Cal. 208, in which this court (Field C. J., dissenting) held that the action of a board of supervisors in passing an ordinance by which the salaries of certain officers were fixed, was judicial and reviewable upon *certiorari*. While the case has never been formally overruled, we think that the doctrine announced in the opinion has been long abandoned. In *Quinchard* v. *Board of Trustees of Alameda*, 113 Cal. 667, [45 Pac. 856], it was held that the complicated duties of the trustees of a municipality in the matter of street .

improvements are legislative, and that the functions of the street superintendent are ministerial in their character. This case was cited with approval in *People ex rel. Dean* v. *Board of Supervisors of Contra Costa County,* 122 Cal. 423, [55 Pac. 131], decided by the court in Bank, in which the granting of a franchise by a board of supervisors was declared to be not a judicial act subject to examination on *certiorari.* (See, also, *Brown* v. *Board of Supervisors,* 124 Cal. 276, [57 Pac. 82]; *Borchard* v. *Supervisors,* 144 Cal. 13, [77 Pac. 708].) *Whitney* v. *Board of Delegates of the San Francisco Fire Department,* 14 Cal. 494, is also called to our attention. That was a case in which the board authorized by law to canvass the votes for the office of chief of the fire department, declared, after hearing a contest, that no one had been elected, and passed a resolution to annul and set aside the election. But the question presented to us here was not before the court in that case. There was objection to the use of the writ to review the acts of a purely voluntary association, but after holding that there was no merit in that contention, the court said:

"It is not disputed that the controversy before the board of delegates was judicial in its nature; and it is conceded that the powers of the board were sufficient for the determination of all questions involved in the controversy."

Although the court did not determine whether the act of the board of delegates in canvassing the election returns was judicial in its nature or not, we apprehend that the judicial functions which in the opinion of the court authorized the issuance of the writ of *certiorari* were those appertaining to the hearing and decision of the election contest. Certain it is that the great weight of authority declares the act of a board in canvassing election returns to be ministerial, and not a subject for examination under a writ of review. (*Lansdon* v. *State Board of Canvassers,* 18 Idaho 596, [111 Pac. 133]; *State* v. *Osburn,* 24 Nev. 195, [51 Pac. 837]; *Bouldin et al.* v. *Lockhart,* 3 Bax. (Tenn.) 262; *Esmeralda Co.* v. *Third Judicial District Court,* 18 Nev. 438, [5 Pac. 64]; *State* v. *Barber,* 4 Wyo. 56, [32 Pac. 14]; 15 Cyc. of Law and Procedure 399.)

It is conceded by respondents' counsel that the giving of an examination by a board of civil service commissioners is not a judicial function, but they assert that the promotion was a

CLX Cal.—38

judicial matter, and that many things connected with the promotion require the exercise of judicial discretion, as, for example, the making of the schedule of credits for the different subjects upon which examinations were held. But the promotions were to be made by the fire commissioners. The holding of examinations and the declaration by the civil service commissioners of the percentages attained by the various candidates for promotion were not judicial acts. In *People ex rel. Schau* v. *McWilliams,* 185 N. Y. 94, [77 N. E. 785], there was an effort made to review the action of the civil service commission in refusing to certify the relator's pay as battalion chief of the fire department. The court held that *certiorari* was not the relator's proper remedy. In that case the commissioners had refused to take the office of battalion chief out of the competitive class, and of that matter in delivering the opinion of the court, Cullen, C. J., said:—

"I admit that the propriety of classifying this office as competitive or non-competitive involves in a high degree the exercise of judgment, but the judgment is that of a legislative or executive officer rather than that of the judge. Its proper determination involves considerations which cannot well be the subject of judicial inquiry. I do not assert that the action of the commissioners in failing to so place offices which should, under the constitutional provision, be placed in the competitive class, is not subject to control, but as said by Judge Martin in *People ex rel. Sweet* v. *Lyman,* (157 N. Y. 368, 375, [52 N. E. 132]): 'The obvious purpose of this provision (the constitutional one) was to declare the principle upon which promotions and appointments in the public service should be made, to recognize in that instrument the principle of the existing statutes upon the subject and to establish merit and fitness as the basis of such appointments and promotions in place of their being made upon partisan and political grounds. It then declares that merit and fitness shall be ascertained by examinations, and also the extent to which they shall be thus determined. The extent to which examinations are to control is declared to be only so far as practicable. This language clearly implies that it is not entirely practicable to fully determine them in that way. It was the purpose of its framers to declare those two principles and leave their application to the direction of the legislature.' If it should appear that there

was a plain violation by the commission of its duty to classify as competitive an office which was clearly and manifestly so, there should be a remedy in the courts. But there is necessarily a large debatable field as to cases within which there will be great differences of opinion, even among the most intelligent and fair-minded men, and as to this field it seems to me that it is not reasonable that the judgment of an appellate court should be substituted for that of the commissioners. Yet, if the action of the civil service commission is to be reviewed by *certiorari,* there seems to be no escape from the conclusion that ultimately the classification of every officer or employee in the service of the state, or its political subdivisions, must be determined by this court, for if the classification presents a question of law reviewable by the supreme court, that question survives in this court. Surely such a result was never contemplated by the framers of the constitution or by the legislature when it enacted the civil service laws. It would cast upon the courts a burden which would not only be difficult for them to bear, but which they are by no means the officers best qualified to discharge. The proper classification of a part of the civil service depends in no small degree on the practical operation of the classification. *A priori* arguments must often yield to actual experience. Take the present case. If we should affirm the action of the civil service commission and it should appear in the future that the classification failed to secure competent officers, surely the classification should be changed. Should the action of the commission be again brought before us for review? It appears that in some of the cities of the state similar offices to that sought by the relator are filled by competitive examinations, and in others not. If the question of the classification is always a judicial one, then there must be the same classification everywhere, for there must be at least some degree of finality in judicial determinations.

"It does not at all follow that the action of the civil service commission is not in any case subject to judicial control; but that such control is a limited and qualified one to be exercised by *mandamus.*"

This language is peculiarly applicable to the present case. If the petitioners here had been dissatisfied with the announcement made by the civil service commissioners that examinations

were to be held on certain dates, and setting forth the subjects and the percentages attainable, they might have compelled the commissioners by *mandamus* to make the general rules prescribed in the charter. This they failed to do, but they submitted themselves to the examination by a body authorized to give such examinations. (See, also, *People ex rel. Buckley* v. *Roosevelt,* 19 App. Div. 431, [46 N. Y. Supp. 517].)

The section of the charter requiring the adoption of general rules for examinations, etc., by the commissioners, expressed, not a mandatory, but a directory admonition. There is nothing in the language of the act which makes the adoption of such rules a jurisdictional prerequisite to the holding of examinations by the board. These rules were merely "to carry out the purposes of this article," i. e. those relating to civil service. The rules were to be a part of the scheme of testing the fitness of candidates for promotion, but the right to examine candidates was not made to depend upon the adoption of these general rules. Having jurisdiction to act, and not acting judicially in holding examinations, the civil service commissioners, even if acting unfairly, could not have their action subjected to examination by a writ of review. (*Greene* v. *Knox et al.,* 76 App. Div. 405, [78 N. Y. Supp. 779]; *Devlin* v. *Dalton,* 171 Mass. 338, [50 N. E. 632, 41 L. R. A. 379].)

We have carefully examined the cases cited by respondent, but are still convinced that the great weight of authority is against the employment of *certiorari* in a case of this kind. *People* v. *Collier,* 175 N. Y. 196, [67 N. E. 309], cited by respondent, was expressly overruled in *People ex rel. Schau* v. *McWilliams,* 185 N. Y. 94, [77 N. E. 785]. Of the other cases cited in this behalf in respondents' brief, nearly all, if not all of them, differ so materially in their facts from this one as to be of little value. *Dill* v. *Wheeler,* 100 App. Div. 155, [91 N. Y. Supp. 686], holds that *mandamus* will not lie to compel a classification of the position of battalion chief. The opinion does not express the theory that *certiorari* will lie, and in the affirming opinion (*Matter of Dill,* 185 N. Y. 106, [77 N. E. 789]) the court held that "the position or office of battalion chief in the fire department of Buffalo is one of that character, the classification of which rests in the discretion and judgment of the civil service commission, and

is not properly the subject of review by the courts." The case of *People ex rel. Schau* v. *McWilliams,* 185 N. Y. 94, [77 N. E. 785], is cited, and the ruling is expressly based on the doctrine of that case. The case of *Chittenden* v. *Wurster,* 152 N. Y. 345, [46 N. E. 857, 37 L. R. A. 809], also cited by respondent, is thus distinguished in the case last cited above: "That whether a particular position in the civil service of the state or its subdivisions is or is not exempt from examination, may present a judicial question within the constitutional provision requiring appointments thereto to be made 'according to merit and fitness, to be ascertained so far as practicable by examinations, which, so far as practicable, shall be competitive,' has been held by this court. (*Chittenden* v. *Wurster,* 152 N. Y. 345, [46 N. E. 857, 37 L. R. A. 809].) Any other principle would allow the constitutional mandate to be violated with impunity. But granting that principle to its fullest extent, it by no means follows that the action of the civil service commission can be reviewed on *certiorari.*" *People* v. *Common Council of Troy,* 78 N. Y. 33, [34 Am. Rep. 500], was another case in which *mandamus* was held not to be the proper remedy. There was no hint that *certiorari* would lie to review the determination by the common council that the relator was not one of the four official papers of the city, but even if there had been such suggestion, the case of *People* v. *Wiggins,* 199 N. Y. 382, [92 N. E. 789], upon the same state of facts, holds that the function of the city council was administrative, and that a writ of review should not issue. In *People ex rel. Myers* v. *Barnes,* 114 N. Y. 317, [20 N. E. 609, 21 N. E. 739], the court held that *certiorari* was the proper remedy to review the action of a board of auditors after refusal to pay a claim against a municipality. We do not see the applicability of the doctrine of that case to the one at bar, but even if it were apposite the Californian rule is different. (See *Andrews* v. *Pratt,* 44 Cal. 318; *Townsend* v. *Copeland,* 56 Cal. 615.) *In re Ricketts,* [111 App. Div. 669, 98 N. Y. Supp. 502] was a proceeding in *mandamus.* The functions of the writ of *certiorari* were not considered, and we cannot see its applicability as an authority.

From the foregoing we conclude that petitioners did not select the proper remedy. The commissioners' failure to pass general rules, and the errors, if any, in establishing the pos-

sible percentages in the awarding of credits, were not matters of judicial fibre, and in no wise affected the jurisdiction of the commission.

The judgment is reversed.

Sloss, J., Angellotti, J., Lorigan, J., and Henshaw, J., concurred.