[Civ. No. 2106.   Second Appellate District.—March 1, 1917.]

## THE PEOPLE ex rel. DAVID B. LYONS, Appellant, v. THOMAS McALEER, Respondent.

COUNTY OF LOS ANGELES—REGISTRAR OF VOTERS—UNAUTHORIZED TRANS-
FER OF DEPUTY COUNTY CLERK—FAILURE OF CIVIL SERVICE COM-
MISSION TO PRESCRIBE RULES.—Under the charter of the county of
Los Angeles, which went into effect on June 2, 1913, the civil
service commission of the city of Los Angeles is without jurisdic-
tion to transfer a deputy county clerk to the office of registrar of
voters, where the commission had not, as required by section 34,
article IX, of such charter, prescribed rules under which it might
make transfers from one position to a similar position in the same
class or grade, and there existed no other provision in the charter
empowering the board to make the transfer.

ID. — OFFICE OF REGISTRAR OF VOTERS — MANNER OF APPOINTMENT. —
Under the provisions of section 14 of article IV of the charter of
the county of Los Angeles, the registrar of voters of such county
is an appointive officer, and the office not being in the unclassified
civil service named in article IX, section 33, appointment to the
office must, as required by subdivision 1, section 11, of article III,
be made by the board of supervisors from the eligible civil service
list, consisting of three persons certified by the commission as
standing highest in accordance with the general rule prescribed by
the commission for the creation of such list.

ID.—CHARACTER OF OFFICE—CHARTER.—The office of registrar of voters
of the county of Los Angeles is, under the charter of that county,
an independent office, as distinct and separate from that of county
clerk as is that of auditor or recorder, and since it is specified as
one of the offices to be filled by appointment to be made by the
board of supervisors from the eligible civil service list, it cannot,
under the pretense that it was of a like grade and class with that
of deputy county clerk, be filled by the act of the civil service com-
mission under the guise of transferring a deputy county clerk in
charge of the registration department to such independent and
distinct office.

APPEAL from a judgment of the Superior Court of Los
Angeles County.   Eugene P. McDaniel, Judge presiding.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, John Beardsley, A. B.
Shaw, Jr., and David Evans, for Appellant.

W. J. Ford, Percy V. Hammon, and Oscar Lawler, for
Respondent.

SHAW, J.—The subject of this proceeding, in the nature of *quo warranto* brought in the superior court of Los Angeles County at the relation of David B. Lyons, is the title to the office registrar of voters of Los Angeles County.

Upon the trial in the court below, judgment was entered declaring the respondent Thomas McAleer entitled to the office, and that the relator David B. Lyons had no right thereto, from which judgment the plaintiff has appealed.

The facts out of which the proceeding arose are as follows: Pursuant to the provisions of section 7½ of article XI of the constitution, the electors of the county of Los Angeles duly adopted a charter for the government of said county, which, upon being approved by the legislature and as provided therein, took effect on June 2, 1913. Among other offices created by the charter and which the board of supervisors was authorized to fill by appointment was that of "registrar of voters." While the charter, save as to services to be rendered in connection with petitions for the recall of officials as provided in article XI thereof, is silent as to the duties of the official holding such position, we may assume that they are identical with those which were imposed upon the county clerk by general laws, and for the performance of which such clerk was allowed a deputy in charge of the registration department at a salary of $150 per month (Pol. Code, sec. 4230), which position, as such deputy in charge of said department, McAleer, as the duly appointed, qualified, and acting deputy, had held from the date of his appointment on June 2, 1911. By subdivision 1 of section 11 of the county charter, the board of supervisors is authorized to appoint the registrar of voters, the appointment of whom (since the incumbent does not fall within the unclassified service hereinafter referred to) must, as provided by said section, be made from the eligible civil service list submitted to said board by the civil service board created by section 30 of article IX of the charter, which subdivision 1 of section 11 also provides that the board of supervisors shall by ordinance fix his compensation. Section 33 of the charter divides the civil service of the county into the unclassified and classified service, and provides that the classified service shall include all positions now existing or hereafter created, excepting certain positions mentioned as belonging to the unclassified service, which, however, does not include the registrar of voters, that being

included in the classified service. Section 34 of said article IX provides that the civil service commission, consisting of three members to be appointed by the board of supervisors (section 30), "shall prescribe, amend and enforce rules for the classified service, which shall have the force and effect of law," which rules, among other things designated in sixteen subheads, shall provide: "1. For the classification of all positions in the classified service. 2. For open, competitive examinations to test the relative fitness of applicants for such positions. 3. For public advertisement of all examinations. 4. For the creation of eligible lists upon which shall be entered the names of successful candidates in the order of their standing in examination. . . . 6. For the appointment of one of the three persons standing highest on the appropriate lists. . . . 10. For transfer from one position to a similar position in the same class and grade. . . . 11. For promotion based on competitive examination and records of efficiency, character, conduct and seniority. . . . An advancement in rank or an increase in salary beyond the limit fixed for the grade by the rules shall constitute promotion. Whenever practicable vacancies shall be filled by promotion. . . . 16. For the adoption and amendment of rules only after public notice and hearing." Followed by the provision that, "The commission shall adopt such other rules, not inconsistent with the foregoing provisions of this section, as may be necessary and proper for the enforcement of this article." Section 37 provides that, "All persons in the county or township service holding positions in the classified service as established by this article, at the time it takes effect, whether holding by election or by appointment, and who shall have been in such service for the six months next preceding shall hold their positions until discharged, reduced, promoted or transferred in accordance with the provisions of this article." Section 38 provides that, "The auditor shall not approve any salary or compensation for services to any person holding or performing the duties of a position in the classified service, unless the payroll or account for such salary or compensation shall bear the certificate of the commission that the persons named therein have been appointed or employed and are performing service in accordance with the provisions of this article and of the rules established thereunder." It is further provided by section 50, which relates to the recall of

officials and specifies certain duties in connection therewith to be performed by the registrar of voters, that "until such time as the board of supervisors shall appoint a registrar of voters under the provisions of this charter, the powers and duties by this section conferred upon the registrar of voters shall be exercised and performed by the county clerk." On June 2, 1913, the day the charter became operative, the board of supervisors by ordinance fixed the salary of the registrar of voters at $150 per month.

No rules whatever were adopted by the commission until January 1, 1914. On October 15, 1913, the county clerk of Los Angeles County addressed a communication to the civil service commission, recommending that Mr. McAleer be transferred to the position of registrar of voters, which communication, on October 16, 1913, was transmitted to the board of supervisors, together with a letter from the civil service commission stating that "this commission holds that under the civil service provisions of the charter, it may authorize the transfer of Mr. McAleer upon recommendation of the board of supervisors, and that in the event the board fails to recommend the transfer, then the position should be filled by open competitive examination." On October 27th the board of supervisors made an order authorizing the transfer of McAleer from the position as deputy county clerk in charge of registration department to the office of registrar of voters, and on November 4, 1913, the civil service commission, as shown by its minutes, made an order as follows: "Upon the joint request of the county board of supervisors and county clerk Lelande, the transfer of Thomas McAleer from service as registration clerk, in the office of the county clerk, to the office of registrar of voters, was authorized." It thus appears that, in the absence of rules which the commission was by section 34 to prescribe and enforce for the classified service, and without any competitive examination therefor, Thomas McAleer, who was a deputy county clerk in charge of the registration department, was by the civil service commission transferred therefrom to the newly created office of registrar of voters. The recommendation of the county clerk that such transfer be made is entitled to no weight whatsoever; neither did the order of the board of supervisors authorizing the making of the transfer confer any power upon the commission to make the same. We must therefore, in order to sustain the

action of the commission, look for some provision of the charter which empowered it to make the transfer. By subdivision 10 of section 34, the commission was not only authorized but required to prescribe rules under which it might make transfers from one position to a similar position in the same class and grade. Assuming, but not holding, that the office of registrar of voters created by the charter was in the same class and grade as that of deputy county clerk in charge of the registration department, nevertheless, until adopted, there was no rule having the force and effect of law under which such transfer could be made. The provision of the charter was not self-executing, but contemplated the adoption of a rule having the force and effect of law to make it operative, and the power to enact such legislation was delegated to the civil service commission. In other words, the charter, which may be termed the organic law of the county, conferred upon the civil service commission the power to enact a law for the transfers designated in subdivision 10 of section 34; but until such legislation, there was no law authorizing the commission to take any action in such cases. Counsel for respondent insist that the jurisdiction of the commission to make the transfer did not depend upon the adoption of such rule; that in making the transfer it had the same power to act in the absence of the rule as though it had been made. In support of this contention they direct our attention to section 3 of article XII of the charter of San Francisco, which provides: "The commissioners shall make rules to carry out the purposes of this article, and for examinations, appointments, promotions and removals, and in accordance with its provisions may from time to time make changes in the existing rules." In construing this provision (*Cook* v. *Civil Service Commission,* 160 Cal. 589, [117 Pac. 663]), the supreme court said: "The section of the charter requiring the adoption of general rules for examinations, etc., by the commissioners, expressed, not a mandatory, but a directory admonition. There is nothing in the language of the act which makes the adoption of such rules a jurisdictional prerequisite to the holding of examinations by the board. These rules were merely 'to carry out the purposes of this article,' i. e., those relating to civil service. The rules were to be a part of the scheme of testing the fitness of candidates for promotion, but the right to examine candidates

was not made to depend upon the adoption of these general rules. . . . The commissioners' failure to pass general rules, and the errors, if any, in establishing the possible percentages in the awarding of credits, were not matters of judicial fibre, and in nowise affected the jurisdiction of the commission.'' In that case, which was a proceeding in *certiorari*, the question involved was the power of the board to hold a competitive examination in the absence of general rules authorized by the section of the San Francisco charter. In the case at bar, no competitive examination was held; nor was there any observance of the civil service scheme adopted, which was clearly intended to prevent transfers or appointment to office, other than in accordance with rules which the commission in express terms was required to adopt. Moreover, the provision of the San Francisco charter which the supreme court was called upon to construe in the case referred to was almost identical with the provision in the Los Angeles charter which provides that ''the commission (in its discretion) shall adopt such other rules, not inconsistent with the foregoing provisions of this section, as may be deemed necessary and proper for the enforcement of this article.'' The commission failed and neglected to obey the mandatory provision of section 34, whereby it was not only authorized but required to prescribe a general rule under and pursuant to which all transfers should be made. Until such rule was adopted, there was no law in the charter or elsewhere authorizing the purported transfer; hence the act of the civil service commission was without authority, arbitrary, and insufficient to vest in McAleer any right or title to the office. While it is true, as claimed by respondent, that the commission, under subdivision 1 of section 34, was authorized to make a rule providing for the classification of all positions in the classified service, it does not follow that said commission, by making the transfer on November 4, 1913, legally adjudged the position of deputy county clerk in charge of the registration department was in the same class and grade as that of registrar of voters, for the reason that, since the commission had adopted no rule for the classification of positions in the classified service, which includes the office of registrar of voters, there was no law under and pursuant to which the commission could determine said positions to be in the same class and grade. To sustain respondent's position would remove all

limitations upon the power of the commission to make transfers, and, in the absence of general rules for guidance, leave it free to act arbitrarily in each particular case, thus nullifying the purpose for which the civil service provision was adopted.

The registrar of voters, as we have seen, is an appointive county officer (section 14), and since it is not in the unclassified service named in section 33, the appointment to the office must, as required by the express provision of subdivision 1 of section 11, be made by the board of supervisors from the eligible civil service list, consisting of three persons certified by the commission as standing highest in accordance with a general rule prescribed by the commission for the creation of such eligible list. (Subdivision 4, section 34.) In our opinion, the office of registrar of voters was an independent office, as distinct and separate from that of county clerk as is that of auditor or recorder, and since it is specified as one of the offices to be filled by appointment to be made by the board of supervisors from the eligible list, it could not, under the pretense that it was of a like grade and class with that of deputy county clerk, be filled by act of the commission under the guise of transferring such deputy clerk to such independent and distinct office. To hold otherwise would violate the plain import of the language contained in the charter and be subversive of the purpose which the electors had in adopting the provision.

The claim of relator Lyons to the office is based upon the following proceedings: On November 20, 1914, pursuant to an order of the civil service commission, an examination was held in accordance with rules theretofore adopted for the purpose of filling the office of registrar of voters. As a result of this examination Lyons was rated highest and, with others, placed on the list of those eligible for appointment to said office. On January 6, 1915, the commission certified to the board of supervisors the names of Lyons and two other persons standing highest, as shown by said examination, any one of whom was eligible for appointment to the office, and on August 10, 1915, the board of supervisors duly appointed Lyons as registrar of voters. Upon receiving a certificate of his appointment to the office, he duly qualified as such official and demanded from McAleer, the incumbent, possession of the office, books, and equipment, with which demand McAleer

refused to comply.  The action of the commission in holding the examination, certifying to the board of supervisors the list of eligibles for appointment, and the action of said board of supervisors in appointing Lyons, seems to have been had and taken in strict accordance with the provisions of the charter, from which we conclude that McAleer had no right or title to the office, and that David B. Lyons was entitled to the same.  And since the facts upon which our conclusion is reached appear from the findings, the judgment in favor of McAleer is not only reversed, but upon the going down of the *remittitur* the trial court is directed to enter judgment upon the findings in favor of David B. Lyons.

Conrey, P. J., and James, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on March 28, 1917, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 20, 1917.