Edward M. O’Gorman, J.
This is a renewal of a motion for summary judgment in an action in which the plaintiffs seek to have declared invalid a county tax deed issued to the defendant, and to declare the plaintiffs still to be the owners of the property.
The defendant counterclaims for judgment declaring him to be the owner.
The facts, as developed by prior proceedings herein, are as follows :
In 1946 the plaintiff Reinhold and the late Francis P. Botens purchased a vacant tract in the Town of Wallkill, Orange County, and thereafter paid the real property taxes assessed thereon until the year 1961. In this year the said Francis P. Botens died, after a substantial illness, and the property tax bill for that year, amounting to $94.09, went unpaid.
The county thereafter, as required by law, advertised that the property would be sold in a tax sale to take place in March, 1962. While the property itself was located near the City of Middle-town, and the owners resided in the same vicinity, the advertisement of the tax sale was published in two newspapers, the Warwick Advertiser and the Warwick Valley Dispatch, both published and having their principal circulation in a village some 20 miles from Middletown. A fair estimate of the limited circulation in the City of Middletown of each of these newspapers would be between 150 and 200 copies.
The sale was held on March 23, 1962, and the tax lien on the property in question was sold to the Second Municipal Corporation of New York City, which was issued a tax sale certificate.
*7 In October, 1962, a redemption bill was sent to the said Francis P. Botens at his address, 147 Prospect Avenue, Middle-town, New York. No such bill was sent to the plaintiff Elizabeth Reinhold, although in 1959 she had requested by letter that the County Treasurer send all future bills and correspondence with respect to this property to her at a different address.
The widow of Francis P. Botens continued to live at 147 Prospect Avenue in the City of Middletown, and it is uncontroverted that she did not receive the redemption bill which may have been sent to her husband. This redemption bill indicated on its face the date of the tax sale, but did not state the expiration of the period within which the property could be redeemed from the sale. In November and in December of 1962, a notice of redemption for this parcel was published in the same two Village of Warwick newspapers. The last date to redeem this parcel of property was March 23, 1963. The plaintiffs failed to redeem the property by that date, and on March 24, 1965, the property was conveyed to the defendant, who had taken an assignment of the purchaser’s interest in the tax sale certificate.
The plaintiffs, however, continued to pay the taxes on the property from the year 1962 through the year 1965.
There is no claim made herein that the County Treasurer, in the conduct of the tax sale or in the publication of the notices therefor, failed to comply with the requirements of the provisions of sections 1002, 1006 and 1014 of the Real Property Tax Law.
The above sections require the County Treasurer to publish the notice of tax sale (§ 1002), and subsequently to publish the notice of unredeemed lands (§ 1014), once a week for six successive weeks in two newspapers designated by the Board of Supervisors of the county pursuant to section 214 of the County Law. This method was followed in the instant case for the years 1961 and 1962, and resulted in the designation of the two Village of Warwick papers.
The plaintiffs, placing their principal reliance upon Mullane v. Central Hanover Trust Co. (339 U. S. 306, 314), contend that the failure to forward the notice of tax sale to the property owners Reinhold and Botens at their respective addresses, which were known to the County Treasurer, and the reliance instead on the publication of the notices, failed to meet recognized standards of due process in this case.
In my opinion, under the facts of this particular case, it is not necessary to impose the additional requirement of mailing to the last known address upon the County Treasurer in order *8 to sustain the plaintiffs’ position in this case. At the outset, it should be pointed out that the plaintiffs in this case are in a somewhat different position than the average taxpayer, who has been said to be under an obligation to keep himself informed as to what was transpiring with reference to his property (see City of New Rochelle v. Echo Bay Waterfront Corp., 268 App. Div. 182, 186). We can indulge in no presumption that any information which Francis Botens may have had prior to his death, as to the date of the impending sale of his property, was in some manner communicated to his wife, and consequently, what may have been an adequate notification to the property owner himself at the time may not meet the test of adequacy when applied to his surviving spouse. Further, the co-owner of the property, who also has a recognized right to protect her interest in this property, had admittedly not been notified of the original tax sale nor, prior thereto, of the situation with respect to unpaid taxes on this parcel, although she had requested that such information be mailed to her address.
In my view, whether or not these particular plaintiffs have been foreclosed of their rights to redeem this parcel sold at tax sale will depend on whether or not the publication of the notice of that sale, and the publication of subsequent notices, in the two Village of Warwick newspapers, were reasonably calculated to give notice to these particular taxpayers of the event of the sale and of the extent of the period in which to redeem.
Section 214 of the County Law, which brought about the unusual selection of village papers in this particular case, has had an interesting history. The selection machinery, whereby local newspapers were to be designated for the purposes of publication of certain legislative and other notices, first appeared in section 3 of chapter 280 of the Laws of 1845. This section, in its entirety, provided as follows: “ It shall be the duty of each board of supervisors in the several counties of this state, at their annual meeting, to appoint the printers for publishing the laws in their respective counties. The appointment shall be made in the following manner: each member of the board of supervisors shall designate by ballot one newspaper printed in the county to publish the laws, and the paper having the highest number of votes, and the paper having the next highest number of votes, shall be the papers designated for printing the laws. If there shall be but one paper printed in the county, then, in that case, the laws shall be published in that paper.”
Presumably, the result of such balloting would tend to result in the papers of widest circulation in the county being selected. However, this section underwent a basic change brought about *9 by chapter 496 of the Laws of 1905. This amendment provided (§ 19): “ The members of the board of supervisors in each county, representing, respectively, each of the two principal political parties into which the people of the county are divided or a majority of such members representing, respectively, each of such parties, shall designate in writing a paper fairly representing the political party to which they respectively belong, regard being had to the advocacy by such paper of the principles of its party and its support of the state and national nominees thereof, and to its regular and general circulation in the towns of the county, to publish the session laws and concurrent resolutions of the legislature required by law to be published ”.
This change has been carried forward through subsequent modifications to its present form in section 214 (L. 1921, ch. 467; L. 1950, ch. 691, as amd. by L. 1951, ch. 685), which provides, in this connection, as follows: “In making such designation, consideration shall be given to the newspapers advocating the principles of such political party, the support of its nominees and the extent of the circulation in the county.”
It would seem that in this enlightened era, when newspapers may support many shades of political opinion on different issues, and when one paper may simultaneously support the candidates of various parties for different offices, there is here provided no longer a practical or reliable method of selecting the papers of widest circulation in the county, calculated to give notice to the largest number of readers. An examination of the following cases will demonstrate the difficulties which have arisen in the past in the attempt to apply this partisan formula to the selection of newspapers: Matter of Relihan v. Brink (285 App. Div. 729) ; People ex rel. Republican & Journal Co. v. Wiggins (199 N. Y. 382) ; People ex rel. Guernsey v. Somers (153 App. Div. 623, affd. 208 N. Y. 621) ; People ex rel. Utica Sunday Tribune Co. v. Williams (140 App. Div. 58, revd. 200 N. Y. 525) ; People ex rel. Mayham v. Dickson (138 App. Div. 606) ; People ex rel. Elmira Advertiser Assn. v. Gorman (169 App. Div. 891, app. dsmd. 222 N. Y. 712) ; Matter of Steuben Advocate v. Board of Supervisors (5 Misc 2d 627) ; Matter of News-Review Pub. Corp. v. Lomenzo (53 Misc 2d 370, affd. 28 A D 2d 823) ; Burns v. Joyce (33 Misc 2d 1088).
The plaintiffs resided in or in the vicinity of the City of Middletown. This city had a population in 1962 of approximately 25,000 persons. Serving that city at that time was a daily newspaper, The Middletown Times Herald, with a county-wide circulation of 25,000. In addition, there was a second daily *10 newspaper in Orange County at that time, The Newburgh Newsf which had a county-wide circulation of 29,000. It cannot be said, under these circumstances, that the selection of the two papers from the same distant village was reasonable and best calculated to give notice to these plaintiffs, when there were available at least two other papers of substantially wider circulation, even though these papers may have failed the partisan political test.
It would appear from the evidence that the parcel of land involved in this case, while originally bearing a modest assessment which resulted in the tax in the amount of $94.09, was, when appraised in the year 1968, of the value of $14,000.
Plaintiffs’ protestations in this case that they did not know of the sale, or of the expiration of the redemption period, are further buttressed by the fact that they continued to pay the real property taxes on this parcel of land from the year 1962 up to and including the year 1965.
Under this view of this case, it is not necessary to decide whether, in addition to publication, the County Treasurer should be required to mail these notices to the property owners. Other statutory alternatives may be available, putting the burden of notice with respect to the right to redeem upon the purchaser (see Matter of Lichtenstein v. Rocchio, 64 Misc 2d 701). It would seem, however, that a re-examination by the Legislature of the provisions of section 214 of the County Law, as they relate to the Real Property Tax Law, would now be in order, and some revisions of the provisions of the statutes involved, which are no longer useful in the light of modern conditions, might be appropriate at this time.
In view of the foregoing, I find that as a result of the notice given in this case, it could not be said to be reasonably probable that the " party proceeded against will be apprised of what is going on against him ” and be afforded an opportunity to defend, which is the test applied by the Court of Appeals in Matter of Empire City Bank (18 N. Y. 199, 215 [1858]); nor can it be said that the notices given in this case afforded to these property owners “ reasonable opportunity at some stage of the proceedings to protect [their] property from an arbitrary or unjust appropriation” (North Laramie Land Co. v. Hoffman, 268 U. S. 276, 288).
Accordingly, the tax deed in question is held to be invalid and the plaintiffs may redeem the subject property upon payment to the county of such a sum as is required by law.